UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>DANIEL CHAVEZ, et al.,<br><br>        Defendants. | Case No. 15-CR-00285-LHK<br><br>**ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART MOTIONS TO DISMISS COUNTS FOR FAILURE TO STATE AN OFFENSE**<br><br>Re: Dkt. Nos. 259, 261, 262, 265, 268 |

Before the Court are Defendant Daniel Chavez's ("Chavez") five Motions to Dismiss Counts for Failure to State an Offense. ECF Nos. 259, 261, 262, 265, 268. Specifically, Chavez seeks to dismiss twelve of the twenty-six counts with which he is charged in the Superseding Indictment, ECF No. 40. Defendant Victor Skates ("Skates") joins in the Motions to Dismiss for the counts applicable to him. ECF No. 276. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES WITH PREJUDICE in part and WITHOUT PREJUDICE in part Chavez's Motions to Dismiss.

## I.      BACKGROUND

A three-count indictment was filed on May 27, 2015 against Defendants Skates, Antonio

Cruz, and Anthony Lek. ECF No. 1. A seventy three–count superseding indictment was filed on October 28, 2015 against Defendants Chavez, Skates, Eduardo Lebron, Eder Torres, Julian Ruiz, Antonio Cruz, Terrell Golden, Anthony Lek, and Robert Loera. ECF No. 40 ("Superseding Indictment").

The main charges in the Superseding Indictment stem from Defendants' alleged participation or association in a racketeering enterprise. According to the Superseding Indictment, Defendants identify themselves as Norteños, Northern California gang members who pledged allegiance and loyalty to the Nuestra Familia prison gang. Superseding Indictment ¶¶ 4, 11–14. Each Defendant was either a member or an associate of one of three Norteño street gangs—East Las Casitas, Salinas East Market, or Santa Rita. *Id.* ¶¶ 17–26. Chavez and Skates belonged to East Las Casitas. *Id.* ¶¶ 17–18. The alleged enterprise was composed of gang members and associates of these three street gangs (including Defendants), as well as other Norteño gang members in Salinas, California. *Id.* ¶ 15. From 2009 and continuing through 2011, the enterprise would organize attacks on rival Sureño gang members and robberies of banks and other commercial establishments. *Id.* ¶¶ 14, 28. Perpetrating such activities was designed to, among other things, promote the enterprise and preserve its power, reputation, and profits. *Id.* ¶ 16. The Superseding Indictment further spells out Chavez's and Skate's (as well as the other Defendants') various roles in the enterprise. *Id.* ¶¶ 17–26.

Chavez is charged with twenty-six counts in the Superseding Indictment. He is charged with five conspiracies: (1) a conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count 1); (2) a conspiracy to commit murder in aid of racketeering (Count 2); (3) a conspiracy to commit assault with a dangerous weapon in aid of racketeering (Count 3); (4) a conspiracy to commit robbery under the Hobbs Act (Count 5); and (5) a conspiracy to commit armed bank robbery (Count 6). He is also charged with multiple murders (Counts 8, 11, 12, 21, and 46); multiple firearm offenses (Counts 4, 7, 9, 10, 13, 14, 22, 23, 47, 48, 67, and 73); attempted murder (Count 65); assault (Count 66); armed bank robbery (Count 71); and Hobbs Act

United States District Court
Northern District of California

1    robbery (Count 72).

2            Skates is charged with fifty-four counts in the Superseding Indictment.  He is charged with

3    the same five conspiracies as Chavez: (1) a RICO conspiracy (Count 1); (2) a conspiracy to

4    commit murder in aid of racketeering (Count 2); (3) a conspiracy to commit assault with a

5    dangerous weapon in aid of racketeering (Count 3); (4) a conspiracy to commit robbery under the

6    Hobbs Act (Count 5); and (5) a conspiracy to commit armed bank robbery (Count 6).  He is also

7    charged with multiple murders (Counts 8, 11, 12, 15, 21, 29, 32, 46, and 49); multiple firearm

8    offenses (Counts 4, 7, 9, 10, 13, 14, 16, 17, 22, 23, 25, 30, 31, 33, 34, 44, 47, 48, 50, 55, 61, 64,

9    and 70); multiple attempted murders (Counts 38, 39, 40, 51, and 52); multiple assaults (Counts 41,

10   42, 43, 53, and 54); multiple armed bank robberies (Counts 59, 62, and 68); and multiple Hobbs

11   Act robberies (Counts 24, 60, 63, and 69).

12           On December 6, 2017, Chavez filed motions attacking the Superseding Indictment.

13   Relevant here, he filed five Motions to Dismiss Counts for Failure to State an Offense.  ECF Nos.

14   259, 261, 262, 265, 268.  Skates joins in four of those five Motions to Dismiss.  ECF No. 276.  On

15   December 20, 2017, the government filed its responses.  ECF Nos. 279, 280.  Chavez filed a reply

16   on December 30, 2017, ECF No. 284, and filed a second reply on January 3, 2018, ECF No. 286.

17   **II.     LEGAL STANDARD**

18           Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to

19   dismiss a count in an indictment on the ground that the count "fail[s] to state an offense."  Every

20   count must "set forth all the elements necessary to constitute the offen[s]e intended to be

21   punished."  *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*,

22   105 U.S. 611, 612 (1882)).  Therefore, where a count fails to recite an essential element of the

23   offense, that count is facially defective and must be dismissed.  *See United States v. Pernillo-*

24   *Fuentes*, 252 F.3d 1030, 1032 (9th Cir. 2001).

25           For purposes of ruling on a motion to dismiss a count in an indictment, courts are "bound

26   by the four corners of the indictment."  *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014)

27

28

Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART MOTIONS TO
DISMISS COUNTS FOR FAILURE TO STATE AN OFFENSE

United States District Court
Northern District of California

(quoting *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002)). The Court accepts the allegations in the indictment as true and "analyz[es] whether a cognizable offense has been charged." *Boren*, 278 F.3d at 914. A motion to dismiss a count in an indictment can be determined before trial if it presents legal, rather than factual, issues. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

## III.   DISCUSSION

The Superseding Indictment charges Chavez with twenty-six counts. Chavez moves to dismiss twelve of those counts on the ground that they fail to state an offense. Chavez's challenges fall into two groups: (1) a challenge to the RICO conspiracy charge (Count 1), and (2) challenges to the firearm charges (Counts 4, 7, 9, 10, 13, 14, 22, 23, 47, 48, and 73).[1]

The Court first considers Chavez's challenge to the RICO conspiracy charge, then considers Chavez's challenges to the firearm charges.

## A.   RICO Conspiracy Charge (Count 1)

The Court first addresses Chavez's challenge to the RICO conspiracy charge. Count 1 charges Chavez with RICO conspiracy under 18 U.S.C. § 1962(d). Section 1962(d) criminalizes conspiring to violate § 1962(c). Section 1962(c), in turn, makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). As the U.S. Supreme Court has held, there are three central elements for a subsection (c) violation: "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52, 62 (1997).

Chavez contends that Count 1 fails to state an offense because it does not adequately allege an "enterprise." The term "enterprise" is defined by statute: it covers "any individual, partnership,

---

[1] Skates is charged with fifty-four counts in the Superseding Indictment and joins in Chavez's Motions to Dismiss for the counts applicable to him—namely, all counts except Count 73. ECF No. 276.

Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART MOTIONS TO
DISMISS COUNTS FOR FAILURE TO STATE AN OFFENSE

corporation, association, or other legal entity" as well as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The latter type of enterprise—i.e., the associated-in-fact enterprise—is the one at issue in the instant case. In general, an associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom v. Microsoft Corp.*, 486 F.3d 541, 549 (9th Cir.) (en banc) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)), *cert. denied*, 552 U.S. 985 (2007). Thus, the U.S. Supreme Court has clarified that an associated-in-fact enterprise has "at least three structural features: [(1)] a purpose, [(2)] relationships among those associated with the enterprise, and [(3)] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Chavez argues that the government's allegations are insufficient to establish the three structural features required for an associated-in-fact enterprise. The Court first analyzes the sufficiency of the "purpose" allegations, then analyzes the sufficiency of the "relationship" allegations, and finally analyzes the sufficiency of the "longevity" allegations.

### 1. "Purpose"

The Court first concludes that the Superseding Indictment sufficiently alleges that the defendants have associated for "a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 583. In the Superseding Indictment, the racketeering enterprise is described as the gang members and associates of East Las Casitas, Salinas East Market, and Santa Rita, as well as members of other Norteño gangs in Salinas, California. ECF 40 ¶¶ 14–15. The Superseding Indictment goes on to catalog the enterprise's purposes: preserving and protecting the enterprise's power, territory, reputation, and profits through violence; keeping community members in fear of the enterprise through violence; providing support and information to Nuestra Familia members and associates; and protecting the enterprise's members and associates who committed crimes by hindering law enforcement efforts. *Id.* ¶ 16. These allegations are sufficient to establish the enterprise's common purpose. *United States v. Fernandez*, 388 F.3d 1199, 1224 (9th Cir. 2004)

United States District Court
Northern District of California

(noting a gang's objectives contained in a "well-defined set of rules that were enforced by violence"). Contrary to Chavez's arguments, these alleged purposes are not simply a restatement of the charged pattern of racketeering activity. *See Turkette*, 452 U.S. at 583 (providing that an enterprise is "an entity separate and apart from the pattern of activity in which it engages"). Thus, the Superseding Indictment sufficiently alleges the first structural feature (i.e., a common purpose) of an associated-in-fact enterprise.

### 2. "Relationship"

The Court next concludes that the Superseding Indictment sufficiently alleges "relationships among those associated with the enterprise." *Boyle*, 556 U.S. at 946. The Superseding Indictment must contain allegations showing an "ongoing organization," either "formal or informal." *Turkette*, 452 U.S. at 583. However, no specific organizational feature is necessary: the enterprise need not have a "hierarchical structure," a "chain of command," or any particular decision-making process; members may "perform different roles at different times"; and the group "need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." *Boyle*, 556 U.S. at 948; *id.* (explaining that an enterprise may exist even when the members "engage in spurts of activity punctuated by periods of quiescence").

The Superseding Indictment alleges a relationship among the enterprise members. The Superseding Indictment specifies that the enterprise was primarily composed of gang members and associates of East Las Casitas, Salinas East Market, and Santa Rita, who coordinated and engaged in criminal activity together. Superseding Indictment ¶¶ 14–15. Specifically, East Las Casitas would allow select members of Salinas East Market and Santa Rita to join forces to attack Sureños or conduct robberies. *Id.* ¶¶ 14, 32–33. The members of the enterprise would meet on a regular basis to discuss the enterprise's membership, rules, and enforcement of the rules. *Id.* ¶ 30. In this way, the enterprise functioned as a unified body and "a vehicle for the commission of two or more predicate crimes." *Odom*, 486 F.3d at 552 (quoting *United States v. Cagnina*, 697 F.2d

915, 921 (11th Cir. 1983)).  Additionally, the Superseding Indictment details each Defendant's role in the organization and time of membership.  Superseding Indictment ¶¶ 17–25.  These allegations are sufficient to demonstrate an agreement to facilitate a scheme with a structure beyond that created whenever individuals collaborate in criminal activity.  Thus, the Superseding Indictment sufficiently alleges the second structural feature (i.e., relationships among the participants) of an associated-in-fact enterprise.

### 3.  "Longevity"

Although Chavez appears to challenge the government's allegations of "longevity" in his Motion to Dismiss, ECF No. 268 at 7, he clarifies in his Reply that he "does not take issue with the duration and time period of the allegations," ECF No. 284 at 4.  The Court agrees that the allegations are sufficient to satisfy the "longevity" requirement.  The Superseding Indictment alleges that the conspiracy began in 2009 and continued through 2011 and that each Defendant had a prolonged membership within the gangs and the enterprise.  Superseding Indictment ¶¶ 1–9, 12–15, 28.  The Ninth Circuit has held that "[a]n almost two-year time span is far more than adequate" to establish the continuity of an enterprise.  *Odom*, 486 F.3d at 553.  Thus, the Superseding Indictment sufficiently alleges the third structural feature (i.e., longevity) of an associated-in-fact enterprise.

Accordingly, because the Superseding Indictment has sufficiently alleged each of the three structural features required for an associated-in-fact enterprise, the Court rejects as a matter of law Chavez's arguments.  The Court therefore DENIES WITH PREJUDICE Chavez's Motion to Dismiss Count 1 for Failure to State an Offense.

## B.     Firearm Charges (Counts 4, 7, 9, 10, 13, 14, 22, 23, 47, 48, and 73)

The Court next turns to Chavez's challenges to the firearm charges.  The relevant counts (Counts 4, 7, 9, 10, 13, 14, 22, 23, 47, 48, and 73) each charge Chavez with a violation of either 18 U.S.C. § 924(c)(1)(A) or § 924(j)(1).  A violation of § 924(j)(1) cannot be established unless there is a violation of § 924(c).  Therefore, the analysis as to all of the firearm counts centers on whether

United States District Court
Northern District of California

they establish a violation of § 924(c)(1)(A).

Section 924(c)(1)(A) mandates certain mandatory punishments for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). Thus, the statute operates to increase the sentence for a defendant who uses, carries, or possesses a firearm in the commission of certain underlying crimes—specifically, "crimes of violence" or drug trafficking crimes. In the instant case, the government contends that Chavez's underlying crimes are "crimes of violence."

Whether Chavez's underlying crimes qualify as "crimes of violence" is the key dispute. Section 924(c)(3) provides the definition:

> [T]he term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) is commonly referred to as the "elements clause," and subsection (B) is known as the "residual clause." The Court employs that terminology here.

For each of the firearm charges, Chavez argues that the underlying crime is not a "crime of violence." First, Chavez contends that none of the underlying crimes satisfies the elements clause. Next, Chavez contends that even if the underlying crimes satisfy the residual clause, the residual clause is unconstitutionally vague. The Court addresses these arguments in turn as necessary.

**1. Elements Clause**

Chavez argues that none of the charged underlying crimes satisfies the elements clause. In deciding whether the underlying crimes are "crimes of violence" under the elements clause, the Court employs an analytical method called the categorical approach. *See United States v. Piccolo*,

8

441 F.3d 1084, 1086–87 (9th Cir. 2006) ("[I]n the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime."); *see also Taylor v. United States*, 495 U.S. 575, 600–02 (1990). Under the categorical approach, the particular facts of the defendant's case do not matter; instead, the Court examines the elements of the offense. *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 920 (9th Cir. 2014). Specifically, the Court compares the elements of the offense with the generic federal definition—here, the definition of "crime of violence" set forth in the elements clause. *See United States v. Sahagun-Gallegos*, 782 F.3d 1094, 1098 (9th Cir. 2015). The offense is a categorical match if its elements are "the same as, or narrower than, those of" the elements clause. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). In contrast, if the offense covers a "broader swath of conduct than" the elements clause, there is no categorical match. *See id.*[2]

As noted above, the elements clause covers an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Neither party disputes that the Court should employ the definition of "physical force" that the U.S. Supreme Court assigned to the same phrase in the Armed Career Criminal Act. Thus, for present purposes, "physical force" means "violent force—*i.e.*, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 134 (2010). Additionally, the use of force must be intentional, rather than reckless or negligent. *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015).

Chavez contends that none of the charged underlying crimes is categorically a "crime of violence" under the elements clause because none requires "the use, attempted use, or threatened use of physical force." The Court proceeds to analyze Chavez's arguments with respect to each underlying crime. The Court first addresses the count predicated on armed bank robbery and

---

[2] For statutes with multiple alternative elements, the U.S. Supreme Court has approved the use of what has been termed the modified categorical approach. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). This Court need not resort to that approach here, as the parties do not present a dispute about whether a pertinent statute is divisible into constituent elements.

9

Hobbs Act robbery (Count 73), second addresses the count predicated on conspiracy to commit armed bank robbery and conspiracy to commit Hobbs Act robbery (Count 7), third addresses the counts predicated on murder in aid of racketeering (Counts 9, 10, 13, 14, 22, 23, 47, 48), and finally addresses the count predicated on conspiracy to commit murder in aid of racketeering, conspiracy to commit assault with a dangerous weapon in aid of racketeering, and conspiracy to commit RICO violations (Count 4).

### i. Armed Bank Robbery and Hobbs Act Robbery (Count 73)

Chavez seeks to dismiss Count 73 for failure to allege the commission of a crime of violence. Count 73 recites armed bank robbery (charged in Count 71) and Hobbs Act robbery (charged in Count 72) as the "crimes of violence." The Court analyzes each of these underlying crimes in turn.

### a. Armed Bank Robbery

Chavez argues that armed bank robbery does not qualify as a "crime of violence" under the elements clause. Thus, the Court must determine whether the offense of armed bank robbery "has as an element the use, attempted use, or threatened use of physical force." The relevant statutes provide:

> (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
>
> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.
>
> . . .

10

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113(a), (d). Chavez contends that § 2113(a) covers situations that do not involve the use or threat of force and that § 2113(d) does not require the intentional use of force. ECF No. 265 at 8.

Chavez acknowledges that the Ninth Circuit has already answered the question presented here. ECF No. 265 at 7 & n.2. Specifically, the Ninth Circuit has held that armed bank robbery in violation of § 2113(a) and (d) categorically qualifies as a "crime of violence" under the elements clause. *United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000); *United States v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990).[3] Chavez nevertheless asks this Court to "consider the continuing validity of those precedents in the face of the rapidly evolving case law" on the categorical approach. ECF No. 265 at 7. However, those precedents have not been expressly abrogated or overruled, and a Ninth Circuit decision remains binding authority unless its "reasoning or theory . . . is clearly irreconcilable with the reasoning or theory of intervening higher authority." *United States v. Slade*, 873 F.3d 712, 715 (9th Cir. 2017) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). That condition is not met here, so the Court must follow *Wright* and *Selfa*, which hold that armed bank robbery in violation of § 2113(a) and (d) categorically qualifies as a "crime of violence" under the elements clause. *See also United States v. Jordan*, 680 F. App'x 634, 635 (9th Cir.) (holding that developments in case law have not "clearly displaced" the holding that "bank robbery categorically qualifies as a 'crime of violence' under [the elements clause]"), *cert. denied*, 138 S. Ct. 160 (2017).

In any event, conducting an analysis of § 2113(a) and (d) leads to the same result. Reading § 2113(a) and (d) together, the elements of the offense of armed bank robbery are:

---

[3] *Selfa* involves an interpretation of Sentencing Guidelines § 4B1.1, which has the same elements-clause language as § 924(c)(3)(A). Throughout this order, the Court—like the parties—relies on cases interpreting the same (or nearly identical) verbiage in many statutory provisions and Sentencing Guidelines.

United States District Court
Northern District of California

(1) the defendant took money belonging to a bank, credit union, or savings and loan, (2) by using force and violence or intimidation, (3) the deposits of the institution were insured by the Federal Deposit Insurance Corporation ("FDIC"), and (4) in committing the offense, the defendant assaulted any person, or put in danger the life of any person by the use of a dangerous weapon.

*Wright*, 215 F.3d at 1028. The second element—taking money "by force and violence or intimidation"—renders the offense a "crime of violence." A taking "by force and violence" plainly entails the use of physical force. Likewise, a taking "by intimidation" involves the threat to use such force. Indeed, intimidation involves putting another in fear of injury. *Selfa*, 918 F.2d at 751. For that reason, intimidation implicates the threat of force and potential violence, and the Ninth Circuit has concluded that intimidation "is sufficient to meet the . . . requirement of a 'threatened use of physical force.'" *Id.* Other circuits have reached the same conclusion that armed bank robbery is a "crime of violence" under the elements clause based on the second element. *See, e.g.*, *United States v. McNeal*, 818 F.3d 141, 153 (4th Cir.), *cert. denied*, 137 S. Ct. 164 (2016), *and cert. denied sub nom. Stoddard v. United States*, 137 S. Ct. 164 (2016); *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 830 (2017).

Chavez separately contends that the fourth element of armed bank robbery—putting another's life in jeopardy by use of a dangerous device—can be accomplished without an intentional use of force. ECF No. 265 at 8. Chavez's bare assertion is likely insufficient, as he does not point to a case where a court has applied the statute to reckless or negligent conduct. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Regardless, the second element of armed bank robbery necessarily contains an intent element in its proscription of taking money "by force and violence or intimidation." In defining "intimidation," the Ninth Circuit expressly incorporated a willfulness component. *Selfa*, 918 F.2d at 751. Therefore, the offense charged here—armed bank robbery under § 2113(a) and (d)—is categorically a "crime of violence."

Because armed bank robbery categorically qualifies as a "crime of violence" under the elements clause, Count 73 alleges the commission of a crime of violence. Chavez's challenge to Count 73 fails as a matter of law. Accordingly, the Court DENIES WITH PREJUDICE Chavez's

12

Motion to Dismiss Count 73 for Failure to State an Offense.

### b.  Hobbs Act Robbery

The Hobbs Act proscribes "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by robbery."  18 U.S.C. § 1951(a). "Robbery" is defined as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property."  *Id.* § 1951(b)(1).  That definition largely tracks the elements clause, using the phrase "actual or threatened force" and even referring to "violence."  Chavez focuses his argument on the remaining language and argues that robberies accomplished by putting the victim in "fear of [future] injury" do not require the "use, attempted use, or threatened use of physical force."  ECF No. 265 at 9.

Here, too, Chavez's arguments are foreclosed by Ninth Circuit precedent.  The Ninth Circuit has explicitly ruled that Hobbs Act "[r]obbery indisputably qualifies as a crime of violence" because it contains the element of "actual or threatened force, or violence."  *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993).  While that holding does not mention the Hobbs Act's "fear of injury" language, the "fear of injury" language is materially identical to the "by intimidation" language in the armed bank robbery statute.  Indeed, the Ninth Circuit defined "intimidation" as instilling fear of injury.  *Selfa*, 918 F.2d at 751.  Thus, just as intimidation involves the threat of physical force, *see id.*, so too does putting a victim in fear of injury.  In an unpublished decision, the Ninth Circuit has made clear that the holding in *Selfa* extends to the "fear of injury" language in the Hobbs Act.  *United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016).

At least four other circuits have reached the same conclusion that Hobbs Act robbery is a "crime of violence" because it satisfies the elements clause.  *See, e.g.*, *United States v. Robinson*, 844 F.3d 137, 144 (3d Cir. 2016), *cert. denied*, 138 S. Ct. 215 (2017); *United States v. Hill*, 832 F.3d 135, 144 (2d Cir. 2016); *In re Fleur*, 824 F.3d 1337, 1340 (11th Cir. 2016); *see also United*

13

*States v. House*, 825 F.3d 381, 387 (8th Cir. 2016) (holding that Hobbs Act robbery is a "serious violent felony" under 18 U.S.C. § 3559(c) because it has as an element the use, attempted use, or threatened use of physical force), *cert. denied*, 137 S. Ct. 1124 (2017).

Because Hobbs Act robbery categorically qualifies as a "crime of violence" under the elements clause, Count 73 alleges the commission of a crime of violence. Chavez's challenge to Count 73 fails as a matter of law. For this additional reason, the Court DENIES WITH PREJUDICE Chavez's Motion to Dismiss Count 73 for Failure to State an Offense.

### ii. Conspiracy to Commit Armed Bank Robbery and Conspiracy to Commit Hobbs Act Robbery (Count 7)

Chavez seeks to dismiss Count 7 for failure to allege the commission of a crime of violence. Count 7 recites conspiracy to commit armed bank robbery (charged in Count 6) and conspiracy to commit Hobbs Act robbery (charged in Count 5) as the "crimes of violence." The parties' arguments do not meaningfully distinguish between these underlying crimes, so the Court analyzes them together and notes any differences where applicable.

The overarching question is whether conspiracy to commit armed bank robbery or conspiracy to commit Hobbs Act robbery is a "crime of violence" under the elements clause. Thus, the Court must determine whether the offense of conspiracy to commit armed bank robbery or conspiracy to commit Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force." To establish a conspiracy to commit armed bank robbery, "the government must show: (1) an agreement (2) to engage in criminal activity and (3) one or more overt acts in furtherance of the conspiracy." *Wright*, 215 F.3d at 1028 (citing 18 U.S.C. § 371). To establish a conspiracy to commit Hobbs Act robbery, "the government must show that: (1) two or more people agreed to commit a robbery or extortion of the type discussed in the Hobbs Act; (2) the defendant had knowledge of the conspiratorial goal; and (3) the defendant voluntarily participated in trying to accomplish the conspiratorial goal." *United States v. Si*, 343 F.3d 1116, 1123–24 (9th Cir. 2003).

Chavez points out that conspiracy to commit armed bank robbery and conspiracy to

14

commit Hobbs Act robbery merely require an agreed plan to commit robbery. ECF No. 286 at 8. He argues that an agreement does not require the use, attempted use, or threatened use of physical force. *Id.* The government responds that both conspiracy charges require a plan and intent to commit a robbery, and a robbery by definition requires the use or threat of force. ECF No. 279 at 16. In the government's view, the agreement to commit a crime of violence is itself a crime of violence under the elements clause. *Id.* The Court agrees with Chavez.

Conspiracy to commit armed bank robbery and conspiracy to commit Hobbs Act robbery both encompass situations where a defendant agrees to commit a robbery in the future. A defendant can enter such an agreement without using, attempting to use, or threatening to use physical force. For example, a defendant could be convicted based on an agreement to commit an armed bank robbery and the subsequent obtaining of a blueprint of the bank for the commission of the robbery. By entering that agreement and securing the blueprint, the defendant would be guilty of conspiracy to commit armed bank robbery and conspiracy to commit Hobbs Act robbery. However, the defendant did not use, attempt to use, or threaten to use force against any person or property. Therefore, conspiracy to commit armed bank robbery and conspiracy to commit Hobbs Act robbery cover more conduct than the elements clause, and neither qualifies as a "crime of violence" under the elements clause.

The Ninth Circuit has not addressed whether either conspiracy to commit armed bank robbery or conspiracy to commit Hobbs Act robbery falls under the elements clause, *see Mendez*, 992 F.2d at 1491 (reserving the question for conspiracy to commit Hobbs Act robbery), but the "overwhelming weight" of recent district court authority holds that conspiracy to commit Hobbs Act robbery is not a "crime of violence," *United States v. Pullia*, No. 16-CR-06450-HDL, 2017 WL 5171218, at *4 (N.D. Ill. Nov. 8, 2017). For example, a court in this circuit recently decided that "conspiracy to commit Hobbs Act robbery does not have as an element the use or attempted use of physical force and is not a crime of violence under the [elements] clause." *United States v. Luong*, No. 99-CR-00433-WBS, 2016 WL 1588495, at *3 (E.D. Cal. Apr. 20, 2016). That

United States District Court
Northern District of California

decision is in accord with numerous decisions both within and outside this district. *See, e.g.*, *Hargrove v. United States*, No. 01-CR-00101-JHL, 2017 WL 4150718, at *3 (N.D. Ill. Sept. 19, 2017); *United States v. Bonaparte*, No. 12-CR-00132-JAD, 2017 WL 3159984, at *5 (D. Nev. July 25, 2017); *United States v. Hernandez*, 228 F. Supp. 3d 128, 138 (D. Me. 2017); *United States v. Baires-Reyes*, 191 F. Supp. 3d 1046, 1050–51 (N.D. Cal. 2016). The reasoning in these cases applies equally to conspiracy to commit armed bank robbery, and the government makes no argument for distinguishing the offenses.[4]

The Court finds unpersuasive the government's central argument that any agreement to commit a crime of violence is also a crime of violence under the elements clause. ECF No. 279 at 16. Specifically, the government asserts that an agreement to take property by force constitutes the attempted or threatened use of physical force. *Id.* at 17. The government's argument as to "attempted use" is unavailing, as conspiracy and attempt are distinct crimes, and unlike attempt, conspiracy lacks any textual basis in the elements clause. *See Baires-Reyes*, 191 F. Supp. 3d at 1050–51 ("[T]he [elements] clause explicitly encompasses attempted use of physical force; by contrast, conspiracy is not specifically covered by [the elements] clause . . . ."). The government's argument as to "threatened use" also fails. The prototypical form of threatening someone with force involves communicating to the victim that force is impending. *See United States v. Cortez-Arias*, 403 F.3d 1111, 1116 (9th Cir. 2005) (defining "threatened use of physical force against the person of another" as including "acts that communicate to another person an intent to use physical force against that person and acts suggesting that physical force against that person may be impending"). Expressing an agreement and intention to commit a robbery need not convey

---

[4] It is true that conspiracy to commit armed bank robbery requires an overt act in furtherance of the conspiracy. The government does not make anything of this fact in its response. ECF No. 279 at 17. As the blueprint example above demonstrates, the overt act need not involve the use or threatened use of force. Moreover, as discussed more fully below with respect to conspiracy to commit murder in aid of racketeering, the overt act for conspiracy is not equivalent to the overt act for attempt. *See United States v. Garcia-Santana*, 774 F.3d 528, 537 (9th Cir. 2014) ("[T]he function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work . . . ." (citation omitted)).

16

Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART MOTIONS TO
DISMISS COUNTS FOR FAILURE TO STATE AN OFFENSE

anything to the victim, let alone that force is impending. Therefore, the offenses of conspiracy to commit armed bank robbery and conspiracy to commit Hobbs Act robbery cover circumstances far outside the core of threatened use of force.

The government's argument that any agreement to commit a crime of violence is a crime of violence under the elements clause has also been rejected by a majority of the circuits. In *United States v. Gore*, 636 F.3d 728, 731 (5th Cir. 2011), the Fifth Circuit held that conspiracy to commit aggravated robbery did not fall within the elements clause even though the underlying offense involved actual or threatened serious bodily injury, or use or exhibition of a deadly weapon. The court reasoned that:

> [a] factfinder could convict a defendant of conspiracy to commit aggravated robbery by concluding that there was an agreement to (1) commit robbery and (2) engage in one or more of the acts enumerated in the aggravated robbery statute, without finding that physical force against the person of another was actually used or that there was an attempted or threatened use of such force.

*Id.* Other circuits have reached a similar conclusion. *See, e.g.*, *United States v. Gonzalez-Ruiz*, 794 F.3d 832, 833 (7th Cir. 2015) (noting that the court has held that conspiracy to commit armed robbery does not qualify as a "violent felony"); *United States v. White*, 571 F.3d 365, 369 (4th Cir. 2009) ("Applying a categorical analysis to the Conspiracy Offense, we first observe that it does not have 'as an element the use, attempted use, or threatened use of physical force against the person of another.'"), *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015); *United States v. King*, 979 F.2d 801, 803 (10th Cir. 1992) ("[I]f a conspiracy to commit armed robbery is to be deemed a 'violent felony' . . . , it must be on the basis of the elements of the conspiracy charge, not the underlying substantive offense.").

The Court is persuaded by the reasoning of these circuits and not by the circuits that have ruled the other way. For example, the Third Circuit concluded that conspiracy to commit robbery falls within the elements clause. *United States v. Preston*, 910 F.2d 81, 87 (3d Cir. 1990). In the Third Circuit's view, because a conspiracy conviction requires the court to define the object of the conspiracy for the jury, the elements of the conspiracy "subsume" the underlying robbery. *Id.* at

17

86. However, as the Fifth Circuit persuasively explained in disagreeing with the Third Circuit, a conviction for conspiracy does not require an *element* involving the use of a force because a jury need not find that the defendant committed the underlying offense. *Gore*, 636 F.3d at 731. Nor is this Court swayed by the Second Circuit's recent recognition of its prior holding that conspiracy to commit Hobbs Act robbery has as an element "actual or threatened use of force." *Hill*, 832 F.3d at 140 (quoting *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991)). There are good reasons not to give much weight to the holding in *DiSomma*: the court there did not engage in much analysis of the "crime of violence" question, probably because the parties appear to have conceded that the conspiracy qualified as a crime of violence. *See* 951 F.2d at 496–97.

For these reasons, the Court rejects the government's argument that either conspiracy to commit armed bank robbery or conspiracy to commit Hobbs Act robbery qualifies as a "crime of violence" under the elements clause. Therefore, the elements clause does not supply a valid basis to deny Chavez's Motion to Dismiss Count 7 for failure to state an offense. Because the Court must still address the parties' arguments with respect to the residual clause, the Court does not rule on Chavez's Motion to Dismiss Count 7 here. The Court will address the residual clause in Section III.B.2 below.

### iii. Murder in Aid of Racketeering (Counts 9, 10, 13, 14, 22, 23, 47, 48)

Chavez seeks to dismiss Counts 9, 10, 13, 14, 22, 23, 47, and 48 for failure to allege the commission of a crime of violence. All of these counts recite murder in aid of racketeering (charged in Counts 8, 12, 21, 46) as the "crime of violence." The Court analyzes all of these counts together.

The overarching question is whether murder in aid of racketeering is a "crime of violence" under the elements clause. Thus, the Court must determine whether the offense of murder in aid of racketeering "has as an element the use, attempted use, or threatened use of physical force." In this regard, RICO punishes a person who "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . any individual in

United States District Court
Northern District of California

violation of the laws of any State or the United States." 18 U.S.C. § 1959(a). Although the parties agree that the Court should analyze the offense of murder, they do not direct the court to the appropriate definition of "murder." Nevertheless, the offense is defined in essentially the same way under California and federal law: "the unlawful killing of a human being . . . with malice aforethought." Cal. Penal Code § 187; 18 U.S.C. § 1111(a).

Chavez argues that murder has "many forms and variations" and can "be committed without the use of physical force capable of causing physical pain or injury." ECF 262 at 9. He lists as examples murder by poisoning, by deprivation of food or water, and by intentional neglect. *Id.* at 10. According to Chavez, none of these forms of murder involves the use, attempted use, or threatened use of violent force. The Court disagrees.

Chavez's argument boils down to the notion that a defendant's indirect application of violent force does not qualify as "us[ing] . . . physical force" for the "crime of violence" determination. The U.S. Supreme Court has rejected that understanding of what it means to "use" force. More precisely, the U.S. Supreme Court has held that "the knowing or intentional application of force is a 'use' of force." *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014). The U.S. Supreme Court used poisoning as an example and explained that the use of force "is not the act of 'sprinkl[ing]' the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Id.* The U.S. Supreme Court worried about the consequences of a contrary ruling: "Under [the defendant's] logic, after all, one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.* Under *Castleman*, even Chavez's examples involve the use of force.

Chavez notes that the U.S. Supreme Court in *Castleman* addressed a conviction under 18 U.S.C. § 922(g)(9) and held that § 922(g)(9) requires a lower level of physical force than § 924(c)(3). *See* 134 S. Ct. at 1413. That distinction does not change the analysis here. Although offensive touching is sufficient to satisfy § 922(g)(9), but not § 924(c)(3), the passages from

United States District Court
Northern District of California

1    *Castleman* cited above address what it means to "use" physical force, not what level of physical

2    force is required.  134 S. Ct. at 1415.  On this point, there appears to be no relevant difference

3    between § 922(g)(9) and § 924(c)(3), and Chavez identifies none.  Thus, *Castleman* precludes

4    Chavez's argument that a murder committed by poisoning or intentional deprivation of food or

5    water does not involve the use of physical force, which the parties agree is defined as "violent

6    force."

7        Other district courts have applied this aspect of *Castleman* in the context of § 924(c) to

8    reach the same answer that murder is categorically a crime of violence under the elements clause.

9    *See, e.g.*, *United States v. Heard*, No. 13-CR-00764-WHO, 2016 WL 9088834, at *2 (N.D. Cal.

10   Jan. 29, 2016); *United States v. Checora*, 155 F. Supp. 3d 1192, 1198 (D. Utah 2015).  This result

11   makes logical sense, as a "finding that murder is not a crime of violence under the [elements]

12   clause of § 924(c) strains common sense and, more importantly, could lead to the absurd result

13   that this and other statutes . . . would be called into question."  *United States v. Moreno-Aguilar*,

14   198 F. Supp. 3d 548, 554 (D. Md. 2016).  In the context of murder in aid of racketeering in

15   particular, this result has added force because the relevant RICO statute, 18 U.S.C. § 1959, is titled

16   "Violent crimes in aid of racketeering activity."  *See also United States v. Baires*, 206 F. Supp. 3d

17   1167, 1180 (E.D. Va. 2016) (describing murder in aid of racketeering as "unquestionably a crime

18   of violence pursuant to the [elements] clause").

19       Because murder in aid of racketeering categorically qualifies as a "crime of violence"

20   under the elements clause, Counts 9, 10, 13, 14, 22, 23, 47, and 48 allege the commission of a

21   crime of violence.  Chavez's challenge to these counts fails as a matter of law.  Accordingly, the

22   Court DENIES WITH PREJUDICE Chavez's Motion to Dismiss Counts 9, 10, 13, 14, 22, 23, 47,

23   and 48 for Failure to State an Offense.

24       **iv. Conspiracy to Commit Murder in Aid of Racketeering, Conspiracy to
              Commit Assault with a Dangerous Weapon in Aid of Racketeering, and
25            Conspiracy to Commit RICO Violations (Count 4)**

26       Chavez seeks to dismiss Count 4 for failure to allege the commission of a crime of

27                                              20

28   Case No. 15-CR-00285-LHK
     ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART MOTIONS TO
     DISMISS COUNTS FOR FAILURE TO STATE AN OFFENSE

violence. Count 4 recites three different conspiracies: (1) conspiracy to commit murder in aid of racketeering (charged in Count 2), (2) conspiracy to commit assault with a dangerous weapon in aid of racketeering (charged in Count 3), and (3) conspiracy to commit RICO violations (charged in Count 1) as the "crimes of violence." The Court analyzes the three conspiracies in turn.

### a. Conspiracy to Commit Murder in Aid of Racketeering

Chavez argues that conspiracy to commit murder in aid of racketeering does not qualify as a "crime of violence" under the elements clause. Thus, the Court must determine whether the offense of conspiracy to commit murder in aid of racketeering "has as an element the use, attempted use, or threatened use of physical force." The Court follows the suggested approach of looking to the predicate offense of conspiracy to commit murder under California law. *See United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009) ("Because racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity, we look to the predicate offenses to determine whether a crime of violence is charged.").

As noted earlier, California law defines murder as "the unlawful killing of a human being . . . with malice aforethought." Cal. Penal Code § 187. Conspiracy under California law requires more than an agreement; some overt act beyond the agreement must be performed. Cal. Penal Code § 184. The overt act must be "done in pursuance of the crime and in manifestation of an intent or design" but "need not amount to a criminal attempt and . . . need not be criminal in itself." *People v. Johnson*, 303 P.3d 379, 385 (Cal. 2013) (citations omitted).

Chavez points out that the act of agreeing to commit murder does not require the use, attempted use, or threatened use of physical force. ECF No. 261 at 8. He further notes that the overt act need not involve the use, attempted use, or threatened use of physical force. ECF No. 286 at 11–12. The government reiterates its position that the agreement to commit a crime of violence is itself a crime of violence under the elements clause. ECF No. 279 at 21. The government further argues that the overt act requirement renders conspiracy to commit murder a "crime of violence" because "any overt act conducted with the specific intent to murder constitutes

21

United States District Court
Northern District of California

the threatened use of violent, physical force." *Id.* The Court agrees with Chavez.

As with the conspiracy charges discussed above, conspiracy to commit murder does not require the use, attempted use, or threatened use of physical force. For example, in *People v. Corica*, 130 P.2d 164 (Cal. Ct. App. 1942), the California Court of Appeal explained that a defendant could be found guilty of conspiracy to commit murder by means of poison sent through the mail if the defendant agreed to commit the murder and purchased the stamps. *Id.* at 167. In that scenario, the defendant has not used, attempted to use, or threatened to use force against any person or property. Therefore, conspiracy to commit murder covers more conduct than, and cannot qualify as, a "crime of violence" under the elements clause.

For the same reasons as above, the Court finds unpersuasive the government's argument that an agreement to commit a crime of violence must also be a crime of violence. The Court also rejects the government's argument that the overt act requirement is dispositive of the "crime of violence" analysis. As the postage stamp example demonstrates, the crime of conspiracy to commit murder can be accomplished without an actual use, attempt to use, or threat to use force. The government effectively seeks to have conspiracy treated the same as attempt, despite the fact that "attempted use" of physical force is listed in the statute, but "conspiracy to use" physical force is not. *See Baires-Reyes*, 191 F. Supp. 3d at 1050–51 ("[T]he [elements] clause explicitly encompasses attempted use of physical force; by contrast, conspiracy is not specifically covered by [the elements] clause . . . ."). Indeed, the overt act required for attempt is different than the overt act required for conspiracy. For attempt, the overt act must be a step "of *such substantiality* that, unless frustrated, the crime would have occurred." *United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1107 (9th Cir. 2009) (internal quotation marks and citation omitted); *see also People v. Lanzit*, 233 P. 816, 819 (Cal. Ct. App. 1924) (holding that an overt act must "reach far enough toward the accomplishment of the intended offense to amount to the commencement of its consummation"). For conspiracy, by contrast, the overt act can be a non-criminal preparatory step that does "not amount to a criminal attempt." *Johnson*, 303 P.3d at 385. In light of this

United States District Court
Northern District of California

distinction, conspiracy to commit murder under California law does not require the use, attempted use, or threatened use of physical force.

Therefore, the Court rejects the government's contention that conspiracy to commit murder qualifies as a "crime of violence" under the elements clause. The Court next addresses the remaining two conspiracies.

### b. Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering

Chavez argues that conspiracy to commit assault does not qualify as a "crime of violence" under the elements clause. Thus, the Court must determine whether the offense of conspiracy to commit assault "has as an element the use, attempted use, or threatened use of physical force." Here, the government merely repeats the argument that any agreement to commit a crime of violence is automatically a crime of violence. ECF No. 279 at 22–23. For the same reasons discussed above, the Court finds this argument unpersuasive. Therefore, the Court rejects the government's contention that conspiracy to commit assault qualifies as a "crime of violence" under the elements clause. The Court next addresses the final remaining conspiracy.

### c. Conspiracy to Commit RICO Violations

Chavez argues that RICO conspiracy does not qualify as a "crime of violence" under the elements clause. Thus, the Court must determine whether the offense of RICO conspiracy "has as an element the use, attempted use, or threatened use of physical force." To prove a RICO conspiracy under 18 U.S.C. § 1962(d), the government must prove only that a conspirator "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *See Salinas*, 522 U.S. at 65. The U.S. Supreme Court has made clear that "[t]here is no requirement of some overt act or specific act" in a RICO conspiracy case. *Id.* at 63. The U.S. Supreme Court further observed that the RICO conspiracy provision is "even more comprehensive than the general [federal] conspiracy offense." *Id.*

The government attempts to evade the breadth of RICO conspiracy by suggesting that the Court should look to the offenses underlying the RICO conspiracy—murder and Hobbs Act

United States District Court
Northern District of California

robbery. ECF No. 279 at 32. The government's approach is misplaced. Unlike violations of the racketeering statutes, a conspiracy to commit RICO violations may exist "whether or not the substantive crime ensues." *Salinas*, 522 U.S. at 65. Because the prosecution need not prove that the underlying crimes took place, their elements cannot satisfy the inquiry under the elements clause. Another district court in this circuit has rejected the same argument that the government advances here and concluded that "a RICO conspiracy is not a crime of violence under the [elements] clause." *Alvarado v. United States*, No. 09-CR-00939-GW, 2016 WL 6302517, at *11 (C.D. Cal. Oct. 14, 2016). Therefore, the Court rejects the government's contention that RICO conspiracy qualifies as a "crime of violence" under the elements clause.

Accordingly, the Court rejects the government's arguments that conspiracy to commit murder in aid of racketeering, conspiracy to commit assault with a dangerous weapon in aid of racketeering, or conspiracy to commit RICO violations qualifies as a "crime of violence" under the elements clause. Therefore, the elements clause does not supply a valid basis to deny Chavez's Motion to Dismiss Count 4 for failure to state an offense. Because the Court must still address the parties' arguments with respect to the residual clause, the Court does not rule on Chavez's Motion to Dismiss Count 4 here. The Court next addresses the residual clause.

### 2. Residual Clause

Before turning to Chavez's arguments about the residual clause, the Court provides an overview of the counts at issue. As discussed above, the Court finds that counts 9, 10, 13, 14, 22, 23, 47, 48, and 73 allege underlying crimes that categorically qualify as "crimes of violence" under the elements clause. Therefore, the Court need not reach the question of whether those crimes also qualify as "crimes of violence" under the residual clause. However, because the Court concludes that counts 4 and 7 recite underlying crimes that do not categorically qualify as "crimes of violence" under the elements clause, the Court discusses Chavez's residual clause arguments with respect to these counts.

Chavez does not contest that counts 4 and 7 recite underlying crimes "that by [their]

United States District Court
Northern District of California

nature, involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Instead, he asserts that the residual clause is unconstitutionally vague for the same reasons that the U.S. Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015), declared unconstitutional the similarly worded residual clause in the Armed Career Criminal Act. ECF No. 259 at 5–7; ECF No. 261 at 5–7.

Forthcoming decisions from the U.S. Supreme Court and the Ninth Circuit are likely to significantly affect the disposition here. On October 2, 2017, the U.S. Supreme Court heard oral argument in *Sessions v. Dimaya*, No. 15-1498. In that case, the Court is reviewing the Ninth Circuit's ruling that 18 U.S.C. § 16(b)—which has identical language to the provision at issue here, § 924(c)(3)(B)—is unconstitutionally vague under *Johnson*. The U.S. Supreme Court has not yet issued a decision.

Similarly, the Ninth Circuit has pending before it a case presenting the exact question at issue here—namely, whether § 924(c)(3)(B) is unconstitutionally vague under *Johnson*. *See* Appellant's Supplemental Opening Brief at 1–2, *United States v. Dominguez*, No. 14-10268 (9th Cir. Nov. 5, 2015), ECF No. 38. The Ninth Circuit has stayed its proceedings pending the U.S. Supreme Court's resolution of *Dimaya*. Order, *Dominguez*, No. 14-10268 (9th Cir. July 12, 2016), ECF No. 86.

In light of this state of affairs, the Court finds that the best course is to deny Chavez's Motions to Dismiss Counts 4 and 7 without prejudice to refiling after the U.S. Supreme Court's decision in *Dimaya* and, if possible, after the Ninth Circuit's decision in *Dominguez*. Chavez and Skates do not seek a stay of the proceedings. ECF No. 286 at 4. Moreover, a stay would be unwarranted in this multi-defendant, multi-count case given the Court's conclusion that only two counts (Counts 4 and 7) out of a total of seventy-three counts in the Superseding Indictment could be implicated by the U.S. Supreme Court's and Ninth Circuit's rulings. Furthermore, counts 4 and 7 are predicated on counts (Counts 1–3 and 5–6) that have not been dismissed and are set to proceed to trial. Finally, the U.S. Supreme Court is expected to issue a decision in *Dimaya* by

United States District Court
Northern District of California

June 2018, well before trial for Chavez and Skates begins in June 2019 (and trial for the non-capital Defendants begins in December 2018). ECF No. 256 at 3.

Accordingly, the Court DENIES WITHOUT PREJUDICE Chavez's Motions to Dismiss Counts 4 and 7.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES WITH PREJUDICE Chavez's Motions to Dismiss Counts 1, 9, 10, 13, 14, 22, 23, 47, 48, and 73 and DENIES WITHOUT PREJUDICE Chavez's Motions to Dismiss Counts 4 and 7.

**IT IS SO ORDERED.**

Dated: January 9, 2018

_____
LUCY H. KOH
United States District Judge

Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART MOTIONS TO
DISMISS COUNTS FOR FAILURE TO STATE AN OFFENSE