UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL CHAVEZ, et al.,<br><br>Defendants. | Case No. 15-CR-00285-LHK<br><br>**ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART DEFENDANT VICTOR SKATES'S MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 352 |

On May 25, 2018, Defendant Victor Skates ("Skates") belatedly filed a Motion to Suppress Evidence at 435 West 9th Street, Upland, California. ECF No. 352 ("Mot."). The government filed a timely opposition on June 6, 2018, ECF No. 368 ("Opp."), and Skates filed a timely reply on June 13, 2018, ECF No. 373 ("Reply"). On June 22, 2018, Skates filed a Supplemental Memorandum in Support of His Motion to Suppress. ECF No. 381. On June 25, 2018, the government filed a response to Skates's Supplemental Memorandum. ECF No. 384. Having considered the submissions of the parties, the record in this case, and the relevant law, the Court DENIES WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART Skates's motion to suppress.

1

Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART DEFENDANT VICTOR SKATES'S MOTION TO SUPPRESS

## I. BACKGROUND

This matter concerns the procurement and execution of a warrant to search Defendant Skates's residence at 435 West 9th Street, Apt. C1 in Upland, California ("the Upland residence"). The following facts are drawn from the search warrant affidavit submitted by Salinas Police Department Detective James Knowlton in support of the application to secure the search warrant ("search warrant affidavit"). ECF No. 352-1 ("Knowlton Aff.").

On November 13, 2009, a robbery occurred at the Alisal Market store in the city of Salinas, California. Knowlton Aff. at 8. Two suspects entered the store and demanded that the store owner hand over the money. *Id.* One of the suspects pointed a black semi-automatic handgun at the owner while the other suspect took the cash from the cash register and emptied the owner's pockets. *Id.* The robbers took approximately $2,500 during the robbery. *Id.*

Law enforcement obtained surveillance footage from the store. *Id.* In reviewing that footage, Officer Dale Fors of the Salinas Police Department recognized the gun-toting suspect as Skates based on previous contacts that Officer Fors had with Skates. *Id.* Officer Fors also identified a tattoo of the number "14" on the suspect's hand and, after further research, confirmed that Skates has that tattoo on his hand. *Id.* (The tattoo is commonly worn by members of the Northern California Norteño gang, as the number "14" represents the fourteenth letter of the alphabet, "N," short for Norteño. *Id.* at 9.) Authorities forwarded the video footage from the robbery to Monterey County Probation Officer Dawn Allen, who had supervised Skates for several years while he was on probation. *Id.* at 8. Officer Allen was immediately able to identify the suspect as Skates. *Id.* In light of this information, officers sought and obtained an arrest warrant from the Monterey County Superior Court. *Id.* at 8–9. The Salinas police, however, were unable to locate him. *Id.* at 9.

Skates was also identified by a confidential informant as being involved in several other bank and store robberies in the California cities of Watsonville, Gilroy, and Salinas spanning from 2009 to 2011. *Id.* The officers obtained surveillance footage depicting a suspect of similar height

and weight to Skates wearing gray sweatpants, a dark colored hooded sweatshirt, a mask, and dark gloves. *Id.* In the videos, the suspect points a black semi-automatic handgun or a medium to large frame revolver at store employees. *Id.* According to the search warrant affidavit, the manner and method of each robbery was the same, and Skates's clothing was "consistent and virtually unchanged" over the course of two years. *Id.* at 10. Investigators also found property taken during one of the robberies in the possession of Skates's associate, Daniel Chavez. *Id.* at 9.

Based on these facts, authorities believed that Skates was the suspect identified in the various armed robberies. *Id.* at 10. However, authorities still had been unable to locate Skates since the Alisal Market robbery in late 2009. In pursuit of the ongoing investigation, officers obtained an electronic communication court order on June 7, 2011 to locate Skates's phone. *Id.* As the search warrant affidavit described, "[o]n June 9, 2011[,] [a]gents from [the] California Department of Justice Bureau of Narcotics Enforcement located Skates and his telephone at 435 W. 9th Street Apt. #C1 in Upland, CA and arrested him for his [arrest] warrant."[1] *Id.* On the day of the arrest, Tera Moran—Skates's girlfriend and the mother of his child—stated that Skates lives at the Upland residence with her and their child. *Id.*

The search warrant affidavit also elaborated on Skates's affiliation with the Norteño gang. "Skates is an admitted East Las Casitas criminal street gang member which is a Norteño criminal street gang in Salinas, CA." *Id.* at 9. In addition to the "14" tattooed on his hand, Skates also has a tattoo of "ELC" on his face and a tattoo of "C" on his neck, both of which are references to Skates's membership in the East Las Casitas gang. *Id.* Furthermore, the search warrant affidavit noted that Skates had contacts with other Norteño gang members and that Skates had been arrested with Norteño gang members on multiple occasions. *Id.*

Finally, the search warrant affidavit explained the significance of certain items of evidence sought to be obtained from the Upland residence. For example, the search warrant affidavit

---

[1] Although this language could be interpreted to imply that Skates was arrested at the Upland residence, the government concedes that Skates was arrested at a store in Upland. ECF No. 384 at 5 & n.3.

3

Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART DEFENDANT VICTOR SKATES'S MOTION TO SUPPRESS

discussed how items of clothing could tie Skates to the armed robberies and to Skates's gang affiliations. *Id.* at 10. Similarly, the search warrant affidavit discussed how the firearms and ammunition used in the commission of the offenses were likely to be stored at Skates's residence. *Id.* Additionally, the search warrant affidavit specifically identified various items of gang indicia that were also likely to be found at Skates's residence because of his verified gang affiliation. *Id.*

Detective Knowlton submitted the search warrant affidavit to Judge Sam Lavorato, Jr. of the Monterey County Superior Court on June 9, 2011. *Id.* at 5, 11. Judge Lavorato signed the search warrant the next day, on June 10, 2011. *Id.* at 5. That same day, at approximately 1:00 a.m., officers executed the search warrant at the Upland residence. Opp., Ex. A at 1. Inside the house, the officers located two safes, which held jewelry and pawn-shop receipts, a police taser reported stolen, and a plastic bag containing approximately a half-ounce of marijuana. *Id.* at 2–3. The officers found articles of clothing named in the search warrant and other pieces of clothing consistent with Norteño gang membership. *Id.* at 3–5. The officers also searched a children's backpack, revealing several handgun magazines and a large amount of ammunition, including law enforcement–only hollow-point rounds. *Id.* at 4. Additionally, the officers found what appeared to be a police-style off-duty magazine holder and a .38 caliber revolver speed loader. *Id.* Finally, the officers discovered in the kitchen a radio scanner tuned to the Upland Police Department frequency and in the bedroom a May 2011 newspaper clipping about a murder. *Id.* at 5.

Skates challenges the search warrant and moves to suppress all of the evidence seized during the June 10, 2011 search of his Upland residence. *See* Mot. The government opposes and argues that the search warrant and subsequent search were valid. *See* Opp.

## II. LEGAL STANDARD

The Fourth Amendment of the U.S. Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists when, under the totality of the circumstances, "there is a fair probability that contraband or

4

Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART DEFENDANT VICTOR SKATES'S MOTION TO SUPPRESS

evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Whether there is probable cause is a "commonsense practical question," and "[n]either certainty nor a preponderance of the evidence is required." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (citation omitted).

The initial determination of probable cause by the issuing judge "should be paid great deference" on review. *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). The duty of the reviewing court is "to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam); *United States v. Celestine*, 324 F.3d 1095, 1100 (9th Cir. 2003) (defining the reviewing court's role as "determin[ing] whether the magistrate had a substantial basis to conclude that the warrant was supported by probable cause"). For these reasons, "resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants." *Kelly*, 482 F.3d at 1050–51 (quoting *Gates*, 462 U.S. at 237 n.10).

The issuing judge may draw reasonable inferences about where evidence is likely to be found based on the nature of the evidence and offense. *United States v. Fernandez*, 388 F.3d 1199, 1253 (9th Cir. 2004). The judge need not determine that the evidence is in fact on the premises to be searched but instead that there is a reasonable nexus between the crime or evidence and the location to be searched. *United States v. Crews*, 502 F.3d 1130, 1136–37 (9th Cir. 2007). "For a finding of probable cause to satisfy this nexus requirement, there must be a fair probability both that a crime has been committed and that evidence of its commission will be found in the location to be searched." *United States v. Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012).

**III. DISCUSSION**

Skates raises three challenges to the search warrant. First, he argues that the allegations in Detective Knowlton's search warrant affidavit failed to establish probable cause to believe that Skates was associated with the Upland residence. Mot. at 6–7. Second, he contends that

5

Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART DEFENDANT
VICTOR SKATES'S MOTION TO SUPPRESS

1 Detective Knowlton did not "adequately explain why the numerous articles he referred to in his affidavit would be expected to be present at the place to be searched." *Id.* at 7. Third, Skates posits that probable cause is lacking because the search warrant affidavit improperly relies on an electronic communication court order. *Id.* at 5–6. The Court addresses each argument in turn.

### A. Skates's Association with the Upland Residence

Skates's first argument is that Detective Knowlton's search warrant affidavit was deficient with regard to whether Skates had an association with the Upland residence. Mot. at 6. Skates contends that Detective Knowlton's allegations are inadequate to establish probable cause because "[a]ll [Detective] Knowlton can say is that defendant Skates'[s] cell phone had some association with the Upland house." *Id.* The facts within the four corners of Detective Knowlton's search warrant affidavit belie Skates's claim.

The search warrant affidavit stated that officers obtained an electronic communication court order on June 7, 2011 to find Skates's phone. Knowlton Aff. at 10. The search warrant affidavit then went on to explain that two days later, on June 9, 2011, officers found Skates and his telephone in the vicinity of the Upland residence and arrested Skates in a store in Upland pursuant to his arrest warrant the same day. *Id.* On the day of the arrest, Tera Moran—Skates's girlfriend and the mother of his child—stated that Skates lived at the Upland residence with her and their child. *Id.* These allegations in combination provide a substantial basis for finding probable cause to believe that Skates resided at the Upland residence. Skates's contentions to the contrary demand a level of precision that is not required for probable cause. *See Ornelas v. United States*, 517 U.S. 690, 695 (1996) (describing "probable cause" as a "commonsense, nontechnical conception[]"). Accordingly, the Court rejects Skates's argument that the search warrant was invalid because it lacked adequate facts connecting him to the Upland residence. The Court DENIES WITH PREJUDICE Skates's motion to suppress on this ground.

### B. Evidence to be Found at the Upland Residence

Next, Skates argues that the search warrant affidavit did not provide enough detail about the articles expected to be found at the Upland residence. Mot. at 7. Specifically, Skates points out that the officers sought and received authorization for the search and seizure of "numerous articles, including firearms, photographs, video tapes or other video media, evidence of street gang membership, numerous drawings, photographs and photographic albums, newspaper clippings related to certain crimes, computers, and electronic devices of all kinds." *Id.* In Skates's view, Detective Knowlton offered nothing beyond "'boilerplate assertions' that gang members habitually keep things like this in their residences" to uphold such a broad search. *Id.* The Court disagrees.

The search warrant affidavit went well beyond "boilerplate assertions." First, the search warrant affidavit spelled out the officers' basis to believe that Skates was involved in the armed robberies. Not only did two officers familiar with Skates identify him from surveillance footage of one robbery, but a confidential informant tied him to other robberies which were committed in the same manner by a figure matching Skates's description and wearing the same clothes in video surveillance of those other robberies. Knowlton Aff. at 9–10. Additionally, investigators found property taken during one of the robberies in the possession of Skates's associate, Daniel Chavez. *Id.* at 9. Based on this evidence of Skates's involvement in the robberies, the search warrant affiant believed that Skates would still be in possession of the clothing, firearms, and ammunition used in the robberies. *Id.* at 10. With respect to the firearms in particular, the affiant declared that, based on his training and experience, criminals commonly keep firearms after the commission of a crime and noted that Skates had "continued to use similar firearms in the commission of the robberies over a period of 24 months." *Id.* It was reasonable for the issuing judge to infer that those items would be found at Skates's residence. *See, e.g.*, *United States v. Jacobs*, 715 F.2d 1343, 1346 (9th Cir. 1983) ("[I]t was reasonable for the magistrate to conclude that such articles of clothing would remain at the residence."); *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir.

7

Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART DEFENDANT VICTOR SKATES'S MOTION TO SUPPRESS

1975) ("[P]eople who own pistols generally keep them at home or on their persons."), *cited in Jacobs*, 715 F.2d at 1346.

Second, the search warrant affidavit detailed Skates's association with the Norteño gang, including his three tattoos and contacts with other gang members. Knowlton Aff. at 9. As the search warrant affidavit explained, such evidence of gang membership could be relevant to motive, could reveal other actors involved, and could be used to support a gang enhancement. *Id.* at 10. Moreover, the declarant provided that, in his training and experience, "it is common for gang members to collect, display, and store gang indicia including paintings, video's [sic], newspaper articles, address books, pictures, drawings, and clothing related to their gang affiliation." *Id.* Likewise, the declarant stated that he "[knew] based on training and experience that gang members use computers, cellular phones, cameras, databases, magnetic storage devices such as disks, thumb drives, SD or similar memory cards, and specific software application[s] to record and maintain their records related to gang membership." *Id.* The Ninth Circuit has held that "a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *Fernandez*, 388 F.3d at 1253 (quoting *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990)). Thus, the issuing judge reasonably credited the declarant's conclusion that this evidence would be found in Skates's home.

In conclusion, the issuing judge reasonably determined that there was a fair probability that the items listed in the search warrant affidavit would be found at the Upland residence. Accordingly, the Court rejects Skates's argument that the search warrant was invalid because it failed to provide a suitable basis on which to believe that he would keep these items at his home. The Court DENIES WITH PREJUDICE Skates's motion to suppress on this ground.

C. **Reliance on Electronic Communication Court Order**

Finally, Skates contends that probable cause was lacking because the search warrant affidavit mentioned an electronic communication court order that was obtained on June 7, 2011 in an attempt to locate Skates's phone. Mot. at 5. According to Skates, the electronic

8
Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART DEFENDANT VICTOR SKATES'S MOTION TO SUPPRESS

communication order "obviously refers to an order pursuant to a statute such as the federal Stored Communications Act, 18 U.S.C. § 2701, et seq.," which requires less than probable cause. *Id.* Therefore, Skates faults the search warrant affidavit for "rel[ying] upon a prior warrantless search to establish that [Skates] had been associated with the Upland house as evidenced by the law enforcement tracking of his cell phone." Reply at 2.

As an initial matter, Skates does not challenge the nature and quality of the electronic communication court order. Rather, Skates challenges the search warrant because it relied upon the electronic communication court order, which presumably required less than probable cause, instead of a search warrant requiring probable cause for the location of Skates's phone. Specifically, Skates's reply states:

> Mr. Skates did not directly attack the court order (not a search warrant issued by a neutral magistrate) under which the authorities located Mr. Skates' telephone, and consequently Mr. Skates, in Southern California, because it is the absence of a search warrant and not the nature and quality of the tracking order that invalidates the search warrant. In other words, Detective Knowlton's search warrant affidavit was fatally flawed because it relied upon a prior warrantless search to establish that Mr. Skates had been associated with the Upland house as evidenced by the law enforcement tracking of his cell phone.

Reply at 2. Because neither party has presented the circumstances surrounding the procurement and execution of the electronic communication court order or even the content of the order, the record regarding the electronic communication court order is incomplete. Nonetheless, based on the instant record, the Court concludes that the officers reasonably relied on the search warrant in good faith, and exclusion of the fruits of their search is not warranted.

The good faith exception recognizes that the exclusionary rule is designed "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974). Where an officer acts in an objectively reasonable manner, "[e]xcluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty." *United States v. Leon*, 468 U.S. 897, 920 (1984). Thus, cases often look to the culpability of the officers as a

9

means of measuring whether exclusion will promote the requisite deterrence. *See Davis v. United States*, 564 U.S. 229, 238 (2011); *Herring v. United States*, 555 U.S. 135, 143 (2009).

Skate's central argument is that the June 7, 2011 court-ordered warrantless search of his cell phone location was per se unreasonable under the Fourth Amendment because it was based on a standard less than probable cause. Reply at 7. He points to June 22, 2018 authority from the U.S. Supreme Court holding that the government's acquisition of historical cell phone records that provide a comprehensive view of the user's past movements is a search generally requiring a warrant under the Fourth Amendment. ECF No. 381 at 2–3 (citing *Carpenter v. United States*, No. 16-402, 2018 WL 3073916, at *9 (U.S. June 22, 2018)). Because of the incompleteness of the instant record, the Court cannot—and does not—determine whether *Carpenter* is implicated in this case.

Even if the Court assumes that *Carpenter* would invalidate the search authorized by the June 7, 2011 electronic communication court order in the instant case, Skates does not identify any binding authority from either the Ninth Circuit or U.S. Supreme Court that would have controlled when the officers sought and obtained that order in June 2011, seven years before the U.S. Supreme Court's June 2018 decision in *Carpenter*. In fact, the Ninth Circuit to this day has not ruled on this issue. *See United States v. Gilton*, No. 16-10109 (9th Cir.), ECF No. 60 (withdrawing from submission a case presenting cell-site location information issue pending the final decision of the U.S. Supreme Court in *Carpenter*).

Skates concedes that the officers were likely operating under a statute, like the federal Stored Communications Act, to obtain the electronic communication court order. Mot. at 5. As the U.S. Supreme Court has instructed, the good faith exception applies to searches conducted in reasonable reliance on subsequently invalidated statutes. *Illinois v. Krull*, 480 U.S. 340, 350 (1987) ("If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as

written."). Thus, the record does not indicate, and Skates does not contend, that the officers acted with "'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights." *Davis*, 564 U.S. at 238.

More broadly, the officers performed their search of the Upland residence pursuant to the search warrant approved by Judge Lavorato. "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 ((internal quotation marks and citation omitted)). This is not a case where the affiant presented false information to the issuing judge or where the warrant is "so lacking in indicia of probable cause" or "so facially deficient" that the executing officers could not reasonably believe the warrant to be valid. *See id.* (citation omitted). The application for a search warrant was supported by a detailed search warrant affidavit from Detective Knowlton. Based on the submitted information, Judge Lavorato found probable cause and issued the search warrant. *Id.* at 5. The officers were entitled to rely on the issuing judge's determination of probable cause. *Krull*, 480 U.S. at 349. "Because the officer's sole responsibility after obtaining a warrant is to carry out the search pursuant to it, applying the exclusionary rule in these circumstances could have no deterrent effect on a future Fourth Amendment violation by the officer." *Id.* The Court finds that there is no deficiency in the search warrant or supporting search warrant affidavit so glaring that the officers could not reasonably rely on the warrant to conduct the search of the Upland residence.

Skates's remaining arguments are unpersuasive. First, he says that "[t]here is no room for application of the *Leon* 'good faith' exception, because it was the police themselves who illegally and unreasonably violated [Skates's Fourth Amendment] rights." Reply at 7–8. However, the U.S. Supreme Court has extended the good faith exception to a case where *police* employees negligently erred in maintaining records in a warrant database. *Herring*, 555 U.S. at 146. Second, Skates cites to *Murray v. United States*, 487 U.S. 533, 537 (1988), but that case deals with a

11
Case No. 15-CR-00285-LHK
ORDER DENYING WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART DEFENDANT VICTOR SKATES'S MOTION TO SUPPRESS

distinct limitation on the exclusionary rule—namely, the independent source doctrine. Because the government does not invoke that doctrine here, the Court need not address it.

The Court reiterates that its ruling is based on the record presently before the Court. On this limited record, the Court concludes that the officers reasonably relied on the search warrant and supporting search warrant affidavit. The Court DENIES WITHOUT PREJUDICE Skates's motion to suppress on this ground.

In his Supplemental Memorandum, Skates makes a request for the first time that the government "produce the [electronic communication court] order relied upon by Detective Knowlton." ECF No. 381 at 2. The Court ORDERS the government to produce the electronic communication court order to Skates by July 3, 2018. If Skates believes that it is appropriate to renew the motion to suppress on this ground based on the newly disclosed information from the government, Skates shall file a formal motion to suppress on this matter by July 11, 2018. The government's opposition is due by July 25, 2018, and Skates's reply is due by August 1, 2018. The motion to suppress will be heard on August 8, 2018 at 9:15 a.m.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART Skates's motion to suppress.

**IT IS SO ORDERED.**

Dated: June 26, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge