UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL CHAVEZ, et al.,<br><br>Defendants. | Case No. 15-CR-00285-LHK<br><br>**ORDER DENYING MOTIONS FOR SEVERANCE**<br><br>Re: Dkt. Nos. 360, 363, 367 |

On June 6, 2018, Defendant Robert Loera ("Loera") and Defendant Antonio Cruz ("Cruz") each filed separate Motions for Severance. ECF Nos. 360 ("Cruz Mot."), 363 ("Loera Mot."). Defendant Terrell Golden ("Golden") joined Cruz's motion for severance. ECF No. 367. The government filed timely oppositions to both motions for severance on June 20, 2018. ECF Nos. 378 ("Cruz Opp."), 379 ("Loera Opp."). Cruz and Golden each filed separate replies on June 27, 2018. ECF Nos. 393, 395. Loera did not file a reply. Having considered the submissions of the parties, the record in this case, and the relevant law, the Court DENIES both Loera's motion for severance and Cruz's motion for severance.

1
Case No. 15-CR-00285-LHK
ORDER DENYING MOTIONS FOR SEVERANCE

## I. BACKGROUND

A three-count indictment was filed on May 27, 2015 against three defendants; Cruz was charged in that indictment but Loera and Golden were not. ECF No. 1. The operative seventy-three count Superseding Indictment was filed on October 28, 2015 against nine defendants, including Cruz, Loera, and Golden. ECF No. 40 ("Superseding Indictment").

The main charges in the Superseding Indictment stem from Defendants' alleged participation or association in a racketeering enterprise. According to the Superseding Indictment, Defendants identify themselves as Norteños, Northern California gang members who pledged allegiance and loyalty to the Nuestra Familia prison gang. *Id.* ¶¶ 4, 11–14. Each Defendant was either a member or an associate of one of three Norteño street gangs—East Las Casitas, Salinas East Market, or Santa Rita. *Id.* ¶¶ 17–26. The alleged enterprise was composed of gang members and associates of these three street gangs (including Defendants), as well as other Norteño gang members in Salinas, California. *Id.* ¶ 15. From 2009 and continuing through 2011, the enterprise would organize attacks on rival Sureño gang members as well as robberies of banks and other commercial establishments. *Id.* ¶¶ 14, 28.

Three defendants have pled guilty. The six remaining defendants in this case are currently divided into three trial groups. The first trial group consists of the four non-capital defendants—Cruz, Loera, Golden, and Eder Torres—who are set to begin trial on December 10, 2018. ECF No. 392 at 4. In the second trial group, Defendant Victor Skates, for whom the death penalty has not been de-authorized, is set to begin trial on June 10, 2019. *Id.* In the third trial group, Defendant Daniel Chavez, for whom the death penalty has not been de-authorized and who was appointed new counsel in April 2018, is set to begin trial on March 2, 2020. *Id.* at 6.

The instant motions for severance concern only the first trial group, and the parties focus on three defendants—Cruz, Loera, and Golden. Those three defendants are all charged together in four counts: (1) racketeering conspiracy (Count 1); (2) conspiracy to commit murder in aid of racketeering (Count 2); (3) conspiracy to commit assault with a dangerous weapon in aid of racketeering (Count 3); and (4) use or possession of a firearm during the commission of a crime of

2

Case No. 15-CR-00285-LHK
ORDER DENYING MOTIONS FOR SEVERANCE

violence (Count 4). Cruz and Loera are charged together in three more counts: (1) conspiracy to commit robbery under the Hobbs Act (Count 5); (2) conspiracy to commit armed bank robbery (Count 6); and (3) use or possession of a firearm during the commission of a crime of violence (Count 7).[1] The remaining counts charge each defendant substantively with specific crimes. Cruz is charged with multiple murders (Counts 18 and 26); multiple firearms offenses (Counts 19, 20, 27, 25, 28, 61, 64, and 70); multiple Hobbs Act robberies (Counts 24, 60, 63, and 69); and multiple armed bank robberies (Counts 59, 62, and 68). Loera is charged with accessory after the fact (Count 45). Finally, Golden is charged with murder (Count 15) and multiple firearms offenses (Counts 16 and 17).

The instant motions propose severing this first trial group into two separate trial groups. Specifically, Loera moves to sever his trial from the trial of Cruz and Golden. Loera Mot. at 6. Cruz (joined by Golden) moves to sever his trial from the trial of Loera. Cruz Mot. at 6. The government opposes both severance requests. Cruz Opp. at 6; Loera Opp. at 10.

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 8(b), an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Because Rule 8(b) is designed to maximize trial convenience and efficiency and minimize prejudice, Rule 8(b) is "construed liberally in favor of joinder." *United States v. Sarkisian*, 197 F.3d 966, 975 (9th Cir. 1999) (citation omitted). Thus, the general rule is that defendants jointly charged are jointly tried. *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018); *see also Zafiro v. United States*, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together.").

Federal Rule of Criminal Procedure 14(a) provides that a district court, in its discretion, may grant a severance when it appears that a joint trial would prejudice a defendant. Severance

---

[1] In another pending motion, Defendants seek dismissal of Counts 4 and 7 for failure to state an offense. ECF No. 362. The Court will address that motion in a separate order.

3
Case No. 15-CR-00285-LHK
ORDER DENYING MOTIONS FOR SEVERANCE

1  should be granted "only if there is a serious risk that a joint trial would compromise a specific trial

2  right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or

3  innocence." *Mikhel*, 889 F.3d at 1046 (quoting *Zafiro*, 506 U.S. at 539). "The possibility of

4  acquittal in a separate trial is not itself sufficient to require severance." *United States v. Jenkins*,

5  633 F.3d 788, 807 (9th Cir. 2011).

## III. DISCUSSION

Loera and Cruz have each filed a motion for severance. Loera moves to sever his trial from the trial of Cruz and Golden. Loera Mot. at 6. Cruz (joined by Golden) moves to sever his trial from the trial of Loera. Cruz Mot. at 6. The Court addresses each severance motion in turn.

### A. Loera's Motion for Severance

Loera moves for severance from Cruz and Golden. Loera notes that he is not alleged to be a gang member; instead, he is alleged to have offered his home as a meeting location for gang members before and after the commission of crimes. *See* Superseding Indictment ¶ 25. For this reason, Loera contends that he will face substantial prejudice from any spillover evidence presented regarding Cruz's and Golden's participation in other murders, robberies, and shootings. Loera Mot. at 2. The Court finds that severance is not warranted.

Importantly, each defendant—Cruz, Loera, and Golden—is charged in counts of racketeering conspiracy, conspiracy to commit murder in aid of racketeering, and conspiracy to commit assault with a dangerous weapon in aid of racketeering. *See* Superseding Indictment ¶¶ 27–44. As Loera acknowledges, such racketeering conspiracy charges are subject to common proof of an enterprise and a conspiracy. *See* Loera Mot. at 3–4. The Ninth Circuit has upheld denials of motions to sever in similar cases where the defendants are charged with an overarching racketeering conspiracy. For example, in *United States v. Martinez*, the defendants in a racketeering conspiracy prosecution objected to being tried together because only a subset of the defendants was charged with certain murders. 657 F.3d 811, 819 (9th Cir. 2011). The Ninth Circuit affirmed the district court's denial of their motion for severance, observing that all of the defendants were charged in one count of racketeering conspiracy so any "spillover from proof of

4

Case No. 15-CR-00285-LHK
ORDER DENYING MOTIONS FOR SEVERANCE

one criminal act to proof of another criminal act . . . followed from the overarching character of the criminal enterprise." *Id.* Likewise, in *United States v. Fernandez*, the Ninth Circuit found no abuse of discretion in the district court's decision to deny a motion to sever in a racketeering conspiracy case. 388 F.3d 1199, 1246 (9th Cir. 2004). The court noted that "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *Id.* at 1242. Here, even though Loera may not have had direct involvement in some criminal acts, "evidence of those acts is relevant to the [racketeering] charges" and "the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated." *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992), *cited in Fernandez*, 388 F.3d at 1242.

Nor has Loera shown that a limiting instruction would not be sufficient to cure prejudice. *See Mikhel*, 889 F.3d 1003, 1046 ("[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." (alteration in original) (quoting *Zafiro*, 506 U.S. at 539)). Again, Ninth Circuit case law presents analogous circumstances. In *United States v. Stinson*, two defendants were charged with racketeering conspiracy. 647 F.3d 1196, 1203 (9th Cir. 2011). One defendant moved to sever "on the ground that he would be prejudiced by allegations against [his codefendant] that d[id] not apply to him." *Id.* at 1204. The Ninth Circuit affirmed the district court's denial of severance, relying on the fact that "[t]he district court explicitly instructed the jury that it 'must decide the case for each defendant on each charge against that defendant separately.'" *Id.* at 1205. The Court finds that appropriate jury instructions would have the same effect in the instant case. Indeed, while the evidence at trial is likely to be voluminous, the nature of the evidence and the legal concepts are well within the province of a jury. *See Fernandez*, 388 F.3d at 1244. Loera has not presented any particular reason to think that a jury guided by limiting instructions will not be able to compartmentalize the evidence as it relates to Cruz, Loera, and Golden. *See United States v. Lazarenko*, 564 F.3d 1026, 1043 (9th Cir. 2009) (explaining that the "primary consideration" is whether the jury can reasonably be expected

5

to separate and evaluate the individual evidence as to each defendant). This case is not even as extreme as *Fernandez*, where the Ninth Circuit concluded that a jury was able to catalogue evidence in a racketeering conspiracy case that involved a "multiplicity of counts facing the eleven co-defendants—alleging different conspiracies with different goals, as well as several predicate [racketeering] or stand-alone [violent crime] offenses involving different sub-groups of the co-defendants." 388 F.3d at 1242.

The interests in favor of a joint trial weigh heavily against severance in the instant case. As noted above, all three defendants are jointly charged in three conspiracy counts. *See* Superseding Indictment ¶¶ 27–38. The racketeering conspiracy charged in Count One forms a central component of the government's case. Indeed, many of the other jointly and non-jointly charged counts are closely connected to the racketeering conspiracy. This focus on the three defendants' alleged participation or association in a racketeering enterprise means that there will be extensive overlap in the evidence. Moreover, because of the vastness of the charged conspiracies and the factual complexity of this case, trial already stands to span multiple months. In this way, a joint trial would greatly advance the recognized interests in "conserv[ing] [taxpayer] funds, diminish[ing] inconvenience to witnesses and public authorities, and avoid[ing] delays in bringing those accused of crime to trial." *Bruton v. United States*, 391 U.S. 123, 134 (1968).

Additionally, a joint trial will also preserve witness safety. In a case where defendants are charged with a racketeering conspiracy that includes instances of witness intimidation and obstruction of justice, there is justifiable concern that cooperating witnesses face actual danger by testifying. Creating an additional trial group raises serious concerns for judicial economy and safety of witnesses without significantly reducing prejudice. *Cf. Richardson v. Marsh*, 481 U.S. 200, 210 (1987) ("It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.").

6

Loera's cited nonbinding authorities do not change the analysis. For example, in *United States v. Cortinas*, the Fifth Circuit concluded that the district court should have granted a motion to sever two defendants in a case involving a marijuana distribution conspiracy. 142 F.3d 242, 248 (5th Cir. 1998). The Fifth Circuit explained that the two defendants were not associated with the charged gang organization and had terminated their involvement with the conspiracy leader before the gang organization joined the conspiracy. *Id.* Here, in contrast, Loera is alleged to be an associate of the Norteños since at least 2009 who allowed gang members to use his house "as a safe haven or a type of home base at which to plan robberies and shootings, regroup after such crimes, monitor police communications and response to crimes utilizing a scanner, and store firearms and other robbery tools and proceeds." Superseding Indictment ¶ 25.

Loera also points to a case in which a Massachusetts district court granted a motion to sever a defendant charged with racketeering conspiracy and other violent crimes from other defendants charged with racketeering conspiracy. *United States v. Green*, 324 F. Supp. 2d 311, 327 (D. Mass. 2004). However, the court's analysis was largely affected by the fact that some of the defendants were eligible for the death penalty. *See id.* at 324 ("In a death penalty case, . . . concerns about reliability are heightened, particularly as to severance."); *see also United States v. Maisonet*, No. 97-CR-00817-DC, 1998 WL 355414, at *5 (S.D.N.Y. July 1, 1998) (noting the danger of prejudice where "some of the crimes charged are murder, conspiracy to commit murder, and attempted murder, and where several of the defendants face the death penalty in light of those charges"). Here, the government does not seek the death penalty against any of the defendants in the first trial group.

In sum, Loera has not shown "a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Mikhel*, 889 F.3d at 1046 (quoting *Zafiro*, 506 U.S. at 539). In light of the various considerations discussed above, the Court finds that a severance is unwarranted in this case. Accordingly, the Court DENIES Loera's motion for severance.

7

### B. Cruz's Motion for Severance

Cruz (joined by Golden) moves for severance from Loera on a separate ground. He argues that his defense depends on exculpatory testimony that Loera would give if Loera is tried separately. Cruz Mot. at 3. Where the basis for a claim for severance is the need for a codefendant's testimony, the defendant must show that (1) he would call the codefendant at a severed trial, (2) the codefendant would in fact testify, and (3) the testimony would be substantially exculpatory. *United States v. Pitner*, 307 F.3d 1178, 1181 (9th Cir. 2002). The court must also consider "the weight and credibility of the proposed testimony and the economy of severance." *Id.*

Cruz has satisfied the first element for severance based on a codefendant's testimony. Specifically, he provides a declaration from his attorney attesting that Loera would not testify at a joint trial and that Cruz would call Loera at a severed trial. ECF No. 360-2 ("Tamor Decl.") ¶ 3; *see also* ECF No. 393-1 ("Hinckley Decl.") ¶ 2 ("Loera will invoke his Fifth Amendment privilege and decline to testify for [Cruz] at any trial in which [Loera] is a defendant."). Nevertheless, Cruz does not definitively establish the other two elements.

First, Cruz does not submit a sworn affidavit from Loera stating that Loera would in fact testify on Cruz's behalf at a severed trial. It is true that Loera's attorney declares that "Loera would testify on [Cruz's] behalf at a subsequent severed trial for [Cruz]." Hinckley Decl. ¶ 2. However, in cases like this one, it is common for defendants to submit declarations from their codefendants to assure the Court of the codefendant's willingness to testify. *See United States v. Mariscal*, 939 F.2d 884, 886 (9th Cir. 1991) (faulting defendant for failing to "present an affidavit from [the codefendant] swearing that [the codefendant] would testify at a separate trial"); *United States v. Shayota*, No. 15-CR-00264-LHK, 2016 WL 4762274, at *3 (N.D. Cal. Sept. 13, 2016) (granting severance where defendant submitted codefendant's declaration promising to testify at a severed trial). The Court does not have those specific assurances here. That absence appears especially telling in this case because the government's opposition noted the lack of a declaration

8
Case No. 15-CR-00285-LHK
ORDER DENYING MOTIONS FOR SEVERANCE

1 from Loera, Cruz Opp. at 5, but Cruz did not submit a declaration from Loera with Cruz's reply or otherwise explain why he could not secure Loera's declaration.

Loera's attorney's testimony is insufficient in another respect. Loera's attorney indicates that Loera "would testify . . . at a *subsequent* severed trial." Hinckley Decl. ¶ 2 (emphasis added). Cruz's attorney also appears to assume that Loera's trial would precede Cruz's trial: "[I]f [Loera] is either acquitted or convicted after trial, he will have no basis to resist testifying at [Cruz's] trial." Tamor Decl. ¶ 4. However, the Court need not accept "a codefendant's offer to testify when that offer is conditioned upon his trial being completed first." *Mariscal*, 939 F.2d at 886. The Ninth Circuit has called this tactic a "simple alibi-swapping device" that may undermine the good faith of the proffer. *Id.* (quoting *United States v. Parodi*, 703 F.2d 768, 780 (4th Cir. 1983)).

Second, Cruz has not shown that Loera's testimony would be substantially exculpatory. Proffered testimony is not "substantially exculpatory" if "it refutes only portions of the government's case, and leaves unaffected other evidence sufficient to convict." *Pitner*, 307 F.3d at 1181. Having reviewed Exhibit A filed under seal, the Court finds that Cruz has not demonstrated that Loera's testimony is substantially exculpatory. In broad strokes, Loera would testify that he does not know Cruz. *See* Cruz Mot. at 3. However, the law is clear that "one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members." Manual of Model Criminal Jury Instructions for the Ninth Circuit 8.23 (2010); *see also United States v. Escalante*, 637 F.2d 1197, 1200 (9th Cir. 1980) ("In order to be a coconspirator, one need not know all the purposes of and participants in the conspiracy.").

Moreover, even without the associative link between Cruz and Loera, the government represents that it has other evidence that Cruz committed numerous violent crimes with fellow Norteño gang members. *See* Cruz Opp. at 6. Because the government has other ways to connect Cruz to the Norteño street gang, Loera's testimony would "refute[] only portions of the government's case, and leave[] unaffected other evidence sufficient to convict." *Pitner*, 307 F.3d at 1181. That conclusion has added force in light of Loera's unique role in the case. *See id.*

9
Case No. 15-CR-00285-LHK
ORDER DENYING MOTIONS FOR SEVERANCE

1 (noting that a court must consider "the weight and credibility of the proposed testimony"). In
2 particular, the Superseding Indictment notes that Loera is not a gang member; instead, he is
3 identified as a person who allowed gang members to use his home before and after commission of
4 crimes. Superseding Indictment ¶ 25. Thus, Loera does not appear well-positioned to negate the
5 government's conspiracy case against Cruz. The same is true for Golden. As the government
6 points out, "Loera's testimony cannot contradict the fact that Golden has Norteño-related tattoos
7 on his face" or rebut the other evidence of Golden's criminal behavior. *See* Opp. at 6 n.2.

Finally, the same benefits of a joint trial that the Court discussed with respect to Loera apply with equal force to Cruz and Golden. In particular, all three defendants are jointly charged in four counts, including racketeering conspiracy, conspiracy to commit murder in aid of racketeering, and conspiracy to commit assault with a dangerous weapon in aid of racketeering. *See* Superseding Indictment ¶¶ 27–38. In *Fernandez*, the Ninth Circuit held that "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." 388 F.3d at 1242. The Court has already highlighted the ways in which trying Cruz, Loera, and Golden together in one group rather than two will promote efficiency, avoid inconvenience, and promote witness safety. *See Bruton*, 391 U.S. at 134 ("Joint trials do conserve [taxpayer] funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial."). For these reasons, Cruz has not shown prejudice sufficient to overcome the general preference for joint trials, and the Court DENIES Cruz's motion for severance.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES both Loera's motion for severance and Cruz's motion for severance.

**IT IS SO ORDERED.**

Dated: July 10, 2018

_____
LUCY H. KOH
United States District Judge