UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL CHAVEZ, et al.,<br><br>Defendants. | Case No. 15-CR-00285-LHK<br><br>**ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN OFFENSE**<br><br>Re: Dkt. Nos. 362, 366, 370, 372 |

On January 9, 2018, this Court denied without prejudice Defendant Daniel Chavez's ("Chavez") motion to dismiss Counts 4 and 7 in the October 28, 2015 Superseding Indictment for failure to state an offense. ECF No. 293 at 26. The denial was without prejudice because forthcoming decisions from the U.S. Supreme Court in *Sessions v. Dimaya*, No. 15-1498, and the Ninth Circuit in *United States v. Dominguez*, No. 14-10268,[1] were likely to significantly affect the disposition as to Counts 4 and 7 in the instant case. *Id.* at 25. This Court granted Chavez

---

[1] Although the parties previously directed this Court's attention to *Dominguez*, it appears that another Ninth Circuit case presenting the same issue—*United States v. Begay*, No. 14-10080—is earlier in the queue. For consistency with this Court's previous order, this Court refers to *Dominguez* throughout this order.

1

permission to refile a motion to dismiss Counts 4 and 7 after the U.S. Supreme Court's decision in *Dimaya* and, if possible, after the Ninth Circuit's decision in *Dominguez*. *Id.*

On April 17, 2018, the U.S. Supreme Court issued its decision in *Dimaya*, 138 S. Ct. 1204 (2018). The next day, this Court issued an order setting a schedule for Chavez to refile the motion to dismiss Counts 4 and 7 in light of *Dimaya*. ECF No. 333.

On June 6, 2018, Chavez timely filed a renewed motion to dismiss Counts 4 and 7 for failure to state an offense. ECF No. 362 ("Mot."). Defendants Antonio Cruz, Terrell Golden, and Victor Skates join in the motion. ECF Nos. 366, 370, 372. On June 20, 2018, the government filed an opposition. ECF No. 377 ("Opp."). On June 27, 2018, Chavez filed a reply. ECF No. 390 ("Reply"). This Court held a hearing on July 11, 2018. ECF No. 404. Having considered the submissions of the parties, the relevant law, the record in this case, and the arguments made by the parties at the July 11, 2018 hearing, this Court GRANTS Chavez's renewed motion to dismiss Counts 4 and 7 for failure to state an offense.

## I.  BACKGROUND

A three-count indictment was filed on May 27, 2015 against three defendants—Defendants Victor Skates, Antonio Cruz, and Anthony Lek. ECF No. 1. A seventy-three count Superseding Indictment was filed on October 28, 2015 against nine defendants—Defendants Chavez, Victor Skates, Eduardo Lebron, Eder Torres, Julian Ruiz, Antonio Cruz, Terrell Golden, Anthony Lek, and Robert Loera. ECF No. 40 ("Superseding Indictment").

The instant motion concerns Counts 4 and 7 in the Superseding Indictment. Both counts charge a violation of 18 U.S.C. § 924(c)(1)(A), which mandates certain mandatory punishments for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." The central question before this Court is whether the crimes upon which Counts 4 and 7 depend qualify as "crimes of violence" under 18 U.S.C. § 924(c)(1)(A), (3).

United States District Court
Northern District of California

All four defendants who have joined in the instant motion—Defendants Chavez, Cruz, Golden, and Skates—are charged in Count 4. Superseding Indictment ¶ 39. Count 4 is predicated on three alleged crimes of violence: (1) conspiracy to commit racketeering violations (Count 1); (2) conspiracy to commit murder in aid of racketeering (Count 2); and (3) conspiracy to commit assault with a dangerous weapon in aid of racketeering (Count 3). *See id.*

Three of the four defendants who have joined in the instant motion—Chavez, Cruz, and Skates—are charged in Count 7. *Id.* ¶ 44. Count 7 is predicated on two alleged crimes of violence: (1) conspiracy to commit robbery under the Hobbs Act (Count 5); and (2) conspiracy to commit armed bank robbery (Count 6). *See id.*

On December 6, 2017, Chavez filed multiple motions to dismiss counts in the Superseding Indictment for failure to state an offense. ECF Nos. 259, 261, 262, 265, 268. In total, Chavez sought to dismiss twelve counts, including Counts 4 and 7. ECF No. 293 at 4. As to all counts except Counts 4 and 7, this Court denied Chavez's motions to dismiss with prejudice. *Id.* at 26. With respect to Counts 4 and 7, this Court denied Chavez's motions to dismiss without prejudice. *Id.* As discussed in more detail in the discussion section below, this Court determined that the three conspiracy offenses underlying Count 4 and the two conspiracy offenses underlying Count 7 do not qualify as "crimes of violence" under the elements clause. *Id.* at 14–18 (Count 7), 20–24 (Count 4). However, this Court explained that the analysis as to the residual clause was likely to be affected by forthcoming decisions from the U.S. Supreme Court in *Dimaya* and the Ninth Circuit in *Dominguez*. *Id.* at 25. Thus, this Court granted Chavez permission to refile a motion to dismiss Counts 4 and 7 after the U.S. Supreme Court's decision in *Dimaya* and, if possible, after the Ninth Circuit's decision in *Dominguez*. *Id.*

The U.S. Supreme Court issued its decision in *Dimaya* on April 17, 2018. *See* 138 S. Ct. 1204. Pursuant to this Court's order, ECF No. 333, Chavez renewed his motion to dismiss Counts 4 and 7 for failure to state an offense on June 6, 2018. *See* Mot. As explained in more detail

Case No. 15-CR-00285-LHK
ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN OFFENSE

below, this Court finds it appropriate to address Chavez's renewed motion to dismiss without awaiting the Ninth Circuit's decision in *Dominguez*.

## II.     LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss a count in an indictment on the ground that the count "fail[s] to state an offense." Every count must "set forth all the elements necessary to constitute the offen[s]e intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). Therefore, where a count fails to recite an essential element of the offense, that count is facially defective and must be dismissed. *See United States v. Pernillo-Fuentes*, 252 F.3d 1030, 1032 (9th Cir. 2001).

For purposes of ruling on a motion to dismiss a count in an indictment, courts are "bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014) (quoting *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002)). Courts accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *Boren*, 278 F.3d at 914. A motion to dismiss a count in an indictment can be determined before trial if it presents legal, rather than factual, issues. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

## III.    DISCUSSION

Chavez moves to dismiss Counts 4 and 7 on the ground that they fail to state an offense. The criminal statute on which those counts are based, 18 U.S.C. § 924(c)(1)(A), operates to increase the sentence for a defendant who uses, carries, or possesses a firearm in the commission of certain underlying crimes—specifically, "crimes of violence" or drug trafficking crimes.

The key question here is whether the crimes underlying Counts 4 and 7 qualify as "crimes of violence." Section 924(c)(3) provides the definition:

[T]he term "crime of violence" means an offense that is a felony and—

United States District Court
Northern District of California

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) is commonly referred to as the "elements clause," and subsection (B) is known as the "residual clause." This Court employs that terminology here.

Chavez argues that each crime underlying Counts 4 and 7 is not a "crime of violence" for the following two reasons. First, Chavez contends that none of the underlying crimes satisfies the elements clause. Mot. at 2–3. Next, Chavez contends that even if the underlying crimes satisfy the residual clause, that clause is unconstitutionally vague. *Id.* at 3–5. This Court addresses these arguments in turn.

## A.     Elements Clause

Chavez argues that none of the charged underlying crimes satisfies the elements clause. This Court has already determined that the three conspiracy offenses underlying Count 4 and the two conspiracy offenses underlying Count 7 do not qualify as "crimes of violence" under the elements clause. ECF No. 293 at 14–18 (Count 7), 20–24 (Count 4). Here, this Court briefly recounts the previous analysis. Importantly, in providing this short summary, this Court introduces an analytical method called the categorical approach that proves central to the parties' dispute under the residual clause.

As the Ninth Circuit has instructed, in deciding whether underlying crimes are "crimes of violence" under the elements clause, courts employ the categorical approach. *See United States v. Piccolo*, 441 F.3d 1084, 1086–87 (9th Cir. 2006) ("[I]n the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime."); *see also Taylor v. United States*, 495 U.S. 575, 600–02 (1990). Under that approach, the particular facts of the defendant's case do not matter; instead, courts examine

5

the elements of the offense. *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 920 (9th Cir.

2014). Specifically, a court must compare the elements of the offense with the generic federal

definition—here, the definition of "crime of violence" set forth in the elements clause. *See United*

*States v. Sahagun-Gallegos*, 782 F.3d 1094, 1098 (9th Cir. 2015). The offense is a categorical

match if its elements are "the same as, or narrower than, those of" the elements clause. *Descamps*

*v. United States*, 570 U.S. 254, 257 (2013). In contrast, if the offense covers a "broader swath of

conduct than" the elements clause, there is no categorical match. *Id.* at 258.[2]

This Court applied the categorical approach to the five conspiracy offenses underlying

Counts 4 and 7. The analysis of each of these conspiracy offenses was largely the same. For

example, the offense of conspiracy to commit armed bank robbery charged in Count 6 serves as an

underlying offense for Count 7. To establish that offense, "the government must show: (1) an

agreement (2) to engage in criminal activity and (3) one or more overt acts in furtherance of the

conspiracy." *United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000) (citing 18 U.S.C.

§ 371). In its previous order, this Court addressed the question of whether the offense of armed

bank robbery is a "crime of violence" under the elements clause. More precisely, this Court had to

determine whether that offense "has as an element the use, attempted use, or threatened use of

physical force." Dkt. No. 293 at 14. This Court held that conspiracy to commit armed bank

robbery does not qualify as a "crime of violence" under the elements clause. *Id.* at 15.

This Court explained that conspiracy to commit armed bank robbery "encompass[es]

situations where a defendant agrees to commit a robbery in the future." *Id.* Those situations

easily fall outside the elements clause because "[a] defendant can enter such an agreement without

using, attempting to use, or threatening to use physical force." *Id.* This Court offered a simple

example:

---

[2] For statutes with multiple alternative elements, the U.S. Supreme Court has approved the use of what has been termed the modified categorical approach. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). That approach is not implicated in this case.

Case No. 15-CR-00285-LHK
ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN OFFENSE

> [A] defendant could be convicted based on an agreement to commit an armed bank robbery and the subsequent obtaining of a blueprint of the bank for the commission of the robbery. By entering that agreement and securing the blueprint, the defendant would be guilty of conspiracy to commit armed bank robbery[.]

*Id.* However, because the defendant in the above example "did not use, attempt to use, or threaten to use force against any person or property," conspiracy to commit armed bank robbery "covers more conduct than the elements clause." *Id.* For that reason, this Court held that conspiracy to commit armed bank robbery does not qualify as a "crime of violence" under the elements clause. *Id.*

This Court further noted textual clues supporting this result. In particular, the elements clause embraces an offense that "has as an element the use, *attempted* use, or *threatened* use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphases added). Noticeably absent from the list is an entry for "conspiracy to use" physical force. Dkt. No. 293 at 22. Nor could the government shoehorn conspiracy to use physical force into either "attempted use . . . of physical force" or "threatened use of physical force." *Id.* at 16. As to "attempted use," conspiracy and attempt are "distinct crimes" whose scopes are not wholly overlapping. *Id.* While both require an overt act, the overt act to establish conspiracy need not be as substantial as the overt act to establish attempt. *See id.* at 16 n.4, 21–23. As to "threatened use," this Court explained that "[t]he prototypical form of threatening someone with force involves communicating to the victim that force is impending." *Id.* at 16. Conspiracy to commit armed bank robbery "cover[s] circumstances far outside th[at] core" because "[e]xpressing an agreement and intention to commit a robbery need not convey anything to the victim, let alone that force is impending." *Id.* Thus, this Court refused to lump conspiracy to use physical force in with attempted or threatened use of physical force. *Id.*

Finally, this Court rejected the government's broadest argument that "any agreement to commit a crime of violence is a crime of violence under the elements clause." *Id.* at 17. This Court noted that a majority of the circuits have vetoed that approach. *Id.* (cataloging the Fourth,

7

Fifth, Seventh, and Tenth Circuits).  The Tenth Circuit put it succinctly: "[I]f a conspiracy to commit armed robbery is to be deemed a 'violent felony' . . . , it must be on the basis of the elements of the conspiracy charge, not the underlying substantive offense."  *United States v. King*, 979 F.2d 801, 803 (10th Cir. 1992).  More recently, the Fifth Circuit reasoned that the crime of conspiracy to commit aggravated robbery did not fall within the elements clause because "[a] factfinder could convict a defendant of conspiracy to commit aggravated robbery . . . without finding that physical force against the person of another was actually used or that there was an attempted or threatened use of such force."  *United States v. Gore*, 636 F.3d 728, 731 (5th Cir. 2011).  This Court also rejected the contrary approach adopted by the Third Circuit which treats the elements of the conspiracy as "subsum[ing]" the underlying crime.  ECF No. 293 at 17–18 (quoting *United States v. Preston*, 910 F.2d 81, 86 (3d Cir. 1990)).  "[A]s the Fifth Circuit persuasively explained in disagreeing with the Third Circuit, a conviction for conspiracy does not require an *element* involving the use of force because a jury need not find that the defendant committed the underlying offense."  *Id.* at 18 (citing *Gore*, 636 F.3d at 731).  Thus, this Court "reject[ed] the government's argument that . . . conspiracy to commit armed bank robbery . . . qualifies as a 'crime of violence' under the elements clause."  *Id.*

Some of the remaining conspiracy offenses underlying Counts 4 and 7 presented small variations on the above analysis.  For example, with respect to the offense of conspiracy to commit murder in aid of racketeering charged in Count 2, this Court explained that "conspiracy to commit murder does not require the use, attempted use, or threatened use of physical force" because "a defendant could be found guilty of conspiracy to commit murder . . . if the defendant agreed to commit [a] murder [by sending poison through the mail] and purchased the stamps."  *Id.* at 22 (citing *People v. Corica*, 130 P.2d 164, 167 (Cal. Ct. App. 1942)).  Similarly, with respect to the offense of racketeering conspiracy charged in Count 1, this Court noted the U.S. Supreme Court's holding that racketeering conspiracy is "even more comprehensive than the general [federal] conspiracy offense" because "[t]here is no requirement of some overt act or specific act."

8

*Id.* at 23 (quoting *Salinas v. United States*, 522 U.S. 52, 63 (1997)).  In the end, the five conspiracy offenses underlying Counts 4 and 7 face the same fate: none is categorically a "crime of violence" under the elements clause.  *See id.* at 24 ("[C]ounts 4 and 7 recite underlying crimes that do not categorically qualify as 'crimes of violence' under the elements clause.").  Having addressed the parties' elements clause arguments, this Court then turned to the residual clause.  *Id.*

**B.    Residual Clause**

This Court's prior analysis of the residual clause was truncated because "[f]orthcoming decisions from the U.S. Supreme Court and the Ninth Circuit [we]re likely to significantly affect the disposition."  *Id.* at 25.  Under the residual clause, the question is whether the offense "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).  Chavez did not argue that the conspiracy offenses underlying Counts 4 and 7 do not fit within the residual clause.  ECF No. 293 at 24–25.  Indeed, the Ninth Circuit has held that one of the charged offenses—namely, conspiracy to commit Hobbs Act robbery—satisfies the residual clause.  *United States v. Mendez*, 992 F.2d 1488, 1491–92 (9th Cir. 1993).  Instead, Chavez contended that the residual clause is unconstitutionally vague.  ECF No. 293 at 25.

At the time of this Court's prior order, a similar vagueness challenge was pending before the U.S. Supreme Court.  Specifically, in *Dimaya*, the U.S. Supreme Court was set to "review[] the Ninth Circuit's ruling that 18 U.S.C. § 16(b)—which has identical language to the provision at issue here, § 924(c)(3)(B)—is unconstitutionally vague."  *Id.*  At the same time, "the Ninth Circuit ha[d] pending before it a case presenting the exact question at issue here—namely, whether § 924(c)(3)(B) is unconstitutionally vague."  *Id.*  This Court therefore denied Chavez's motion to dismiss Counts 4 and 7 "without prejudice to refiling after the U.S. Supreme Court's decision in *Dimaya* and, if possible, after the Ninth Circuit's decision in *Dominguez*."  *Id.*

Three months after this Court issued its previous order in early January 2018, the U.S. Supreme Court handed down its decision in *Dimaya* on April 17, 2018.  *See* 138 S. Ct. 1204.  The

United States District Court
Northern District of California

1    following day, this Court issued an order setting a schedule for Chavez to refile the motion to

2    dismiss Counts 4 and 7 in light of *Dimaya*.  ECF No. 333.  Chavez's renewed motion to dismiss

3    Counts 4 and 7 is currently before this Court.

4         Chavez asks this Court to press forward without awaiting the Ninth Circuit's decision in

5    *Dominguez*.  *See* Mot. at 5 ("[T]his Court need not await the Ninth Circuit's answer to that

6    question in order to dismiss Counts 4 and 7 from the superseding indictment.").  The government

7    does not seek a stay of proceedings but notes that "the Ninth Circuit is progressing toward a

8    decision in *Dominguez*."  Opp. at 3–4.  This Court finds it appropriate to proceed to address the

9    constitutional challenge at this juncture.  As this Court describes below, the current state of Ninth

10   Circuit and U.S. Supreme Court law dictate a ruling in Chavez's favor.  In fact, the government

11   acknowledges that its argument depends on its disagreement with binding Ninth Circuit authority

12   that has not been overruled by the Ninth Circuit en banc or by the U.S. Supreme Court.  *See id.* at

13   7 (stating that the government "believes that the Ninth Circuit's current precedent was wrongly

14   decided").  Because the December 10, 2018 start of the non-capital defendants' trial is quickly

15   approaching and the time until the Ninth Circuit issues a ruling could be lengthy (especially if en

16   banc proceedings are initiated), this Court will resolve the constitutional issue now.

17        Thus, this Court picks up the analysis where it left off in its previous order.   The operative

18   question is whether the residual clause in § 924(c)(3)(B) is unconstitutionally vague.  Before

19   reaching that question, this Court first discusses two relevant cases in which the U.S. Supreme

20   Court held that similar provisions were void for vagueness.  In *Johnson v. United States*, 135 S.

21   Ct. 2551 (2015), the U.S. Supreme Court held that another provision of § 924—namely, the

22   residual clause of § 924(e)(2)(B)(ii)—is unconstitutionally vague.  In *Dimaya*, 138 S. Ct. 1204, the

23   U.S. Supreme Court held that 18 U.S.C. § 16(b)—which has identical language to

24   § 924(c)(3)(B)—is unconstitutionally vague.  After providing an overview of *Johnson* and

25   *Dimaya*, this Court turns to an application of the principles in those cases to the provision at issue

26   in the instant case, § 924(c)(3)(B).

27

28

Case No. 15-CR-00285-LHK
ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN
OFFENSE

**1.** *Johnson – § 924(e)(2)(B)(ii)*

In *Johnson*, the U.S. Supreme Court addressed the issue of whether a portion of the Armed Career Criminal Act ("ACCA")—namely, the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii)—is unconstitutionally vague. 135 S. Ct. at 2555. The Supreme Court began by summarizing the principles underpinning the Constitution's prohibition of vague criminal laws. Under the Fifth Amendment, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Precedent of the U.S. Supreme Court has held that "a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement" violates the Fifth Amendment's guarantee of due process. *Johnson*, 135 S. Ct. at 2556. This principle is applicable to "statutes defining elements of crimes" as well as "statutes fixing sentences." *Id.* at 2557. The relevant question in *Johnson* was whether the residual clause of § 924(e)(2)(B)(ii), which increases the sentences of felons in possession of firearms, is unconstitutionally vague. 135 S. Ct. at 2557.

The relevant portion of § 924(e)(2)(B)(ii) provides a definition of the term "violent felony." The text reads: "[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*" 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). The italicized phrase is the residual clause that was challenged in *Johnson* as unconstitutionally vague.

The U.S. Supreme Court held that "[t]wo features of the residual clause conspire to make it unconstitutionally vague." *Johnson*, 135 S. Ct. at 2557. First, the Supreme Court explained that binding Supreme Court authority "requires courts to use . . . the categorical approach when deciding whether an offense" falls within the residual clause. *Id.*[3] That approach poses issues, the Supreme Court said, because "the judicial assessment of risk" is tied to "a judicially imagined

---

[3] The form of the categorical approach used for the residual clause differs slightly from the form used for the elements clause because in the context of the residual clause, courts examine the ordinary case, rather than the elements of a given crime. *See Dimaya*, 138 S. Ct. at 1211.

11

Case No. 15-CR-00285-LHK
ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN OFFENSE

'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Moreover, there is no settled way to "go about deciding what kind of conduct the 'ordinary case' of a crime involves." *Id.* The Supreme Court took attempted burglary as an example and pointed out that judges could disagree about whether the "ordinary case" involves a violent confrontation or no confrontation at all. *Id.* at 2558. Ultimately, "[t]he residual clause offers no reliable way to choose between these competing accounts of what 'ordinary' attempted burglary involves." *Id.*

Second, the Supreme Court stated that "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* Specifically, the Supreme Court focused on the residual clause's "imprecise 'serious potential risk' standard." *Id.* Even if that standard could be reliably applied to "real-world facts," the task becomes significantly more indeterminate when applied to "a judge-imagined abstraction." *Id.* Adding to the confusion, the residual clause lists four crimes (burglary, arson, extortion, and crimes involving the use of explosives) with no clear connection "in respect to the degree of risk each poses." *Id.* (quoting *Begay v. United States*, 553 U.S. 137, 143 (2008)). The Supreme Court did not cast doubt on statutes that use expansive standards like "serious potential risk." *Id.* at 2561. Instead, the Supreme Court focused on the unique difficulties attendant to applying "the 'serious potential risk' standard to an idealized ordinary case of the crime." *Id.* Such an "abstract inquiry offers significantly less predictability" than one that applies a standard to actual, rather than imagined, facts. *Id.*

In sum, "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* at 2558. The Supreme Court added that this conclusion was reinforced by courts' persistent failure to establish a workable, predictable standard. *Id.* at 2558–60; *see also id.* at 2560 ("Nine years' experience trying to derive meaning from the residual clause convinces us that we have embarked upon a failed enterprise."). In conclusion, the Supreme Court explained that

12

"[e]ach of the uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a task for us which at best could be only guesswork.'" *Id.* (quoting *United States v. Evans*, 333 U.S. 483, 495 (1948)). Thus, the Supreme Court held that the residual clause in § 924(e)(2)(B)(ii) "does not comport with the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2560.

In a final section of the opinion, the Supreme Court declined the dissent's invitation to rescue the residual clause from vagueness by "jettison[ing] . . . the categorical approach." *Id.* at 2562. The Supreme Court first noted that the government had not requested "abandon[ing] the categorical approach in residual-clause cases." *Id.* Regardless, the Supreme Court articulated that it had previously adopted the categorical approach for "good reasons." *Id.* In particular, the text of § 924(e)(2)(B)(ii) provided an indication that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* (quoting *Taylor*, 495 U.S. at 600). Additionally, there was "the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction." *Id.* Therefore, "'[t]he only plausible interpretation' of the law . . . requires use of the categorical approach." *Id.* (quoting *Taylor*, 495 U.S. at 602). Accordingly, the Supreme Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Id.* at 2563.

### 2. *Dimaya* – § 16(b)

In *Dimaya*, the U.S. Supreme Court confronted a similar vagueness issue in the context of immigration. 138 S. Ct. at 1210. Specifically, the Supreme Court was asked to determine whether 18 U.S.C. § 16(b), which is included on a list of aggravated felonies that can result in an alien's removal, is unconstitutional under the reasoning of *Johnson*. *Dimaya*, 138 S. Ct. at 1210–12. Like § 924(e)(2)(B)(ii), § 16(b) is a definitional provision. Section 16(b) defines "crime of violence" in terms close to those in the Armed Career Criminal Act's residual clause: "The term

Case No. 15-CR-00285-LHK
ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN OFFENSE

'crime of violence' means any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The government argued that § 16(b) is "materially clearer" than the residual clause counterpart in § 924(e)(2)(B)(ii) that was invalidated by the Supreme Court in *Johnson*. *Dimaya*, 138 S. Ct. at 1213. The U.S. Supreme Court disagreed. *Id.*

The Supreme Court described *Johnson* as "a straightforward decision, with equally straightforward application" to § 16(b). *Dimaya*, 138 S. Ct. at 1213. In particular, the Supreme Court reasoned that § 16(b) contains the same two features that, in combination, rendered § 924(e)(2)(B)(ii)'s residual clause unconstitutionally vague. *Dimaya*, 138 S. Ct. at 1216. First, like the residual clause in § 924(e)(2)(B)(ii), § 16(b) has been construed to require application of the categorical approach. *Dimaya*, 138 S. Ct. at 1215. The Supreme Court explained that because "§ 16(b) also calls for a court to identify a crime's 'ordinary case' in order to measure the crime's risk" and "[n]othing in § 16(b) helps courts to perform that task, just as nothing in [§ 924(e)(2)(B)(ii)] did," the analysis from *Johnson* applies with full force. *Id.* "Once again, the questions [raised in *Johnson*] have no good answers; the 'ordinary case' remains, as *Johnson* described it, an excessively 'speculative,' essentially inscrutable thing." *Id.* (quoting *Johnson*, 135 S. Ct. at 2558).

Additionally, "§ 16(b) also possesses the second fatal feature of [§ 924(e)(2)(B)(ii)]'s residual clause: uncertainty about the level of risk that makes a crime 'violent.'" *Id.* The Supreme Court saw no difference between the threshold in § 924(e)(2)(B)(ii) ("serious potential risk") and the threshold in § 16(b) ("substantial risk"). *Dimaya*, 138 S. Ct. at 1215. In fact, "*Johnson* as much as equated the two phrases." *Id.* The Supreme Court made clear that "such a non-numeric standard is [not] alone problematic" because courts frequently apply hazy standards to real-world conduct. *Id.* Rather, "[t]he difficulty comes, in § 16's residual clause just as in [§ 924(e)(2)(B)(ii)]'s, from applying such a standard to 'a judge-imagined abstraction'—i.e., 'an

14

idealized ordinary case of the crime.'" *Id.* at 1215–16.  In combination with the categorical approach, "the ['substantial risk'] standard ceases to work in a way consistent with due process." *Id.* at 1216.

The Supreme Court was not persuaded by any of the government's identified "textual discrepancies" between § 16(b) and § 924(e)(2)(B)(ii).  *Dimaya*, 138 S. Ct. at 1218.  For example, unlike § 924(e)(2)(B)(ii), § 16(b) includes a requirement that the risk arise from acts taken "in the course of committing the offense."  However, the Supreme Court explained that the temporal limitation "does little to narrow or focus the statutory inquiry" because "[i]n the ordinary case, the riskiness of a crime arises from events occurring during its commission, not events occurring later." *Dimaya*, 138 S. Ct. at 1219.  Likewise, while § 924(e)(2)(B)(ii) recites a risk of "physical injury" and § 16(b) recites a risk of "physical force," "evaluating the risk of 'physical force' itself entails considering the risk of 'physical injury.'" *Dimaya*, 138 S. Ct. at 1220–21.  Finally, the absence of enumerated crimes in § 16(b) did not matter because *Johnson*'s analysis "demonstrates that the list of crimes was not the culprit." *Dimaya*, 138 S. Ct. at 1221.  In the end, none of the textual differences related "to the pair of features—the ordinary-case inquiry and a hazy risk threshold—that *Johnson* found to produce impermissible vagueness" or otherwise affected "the determinacy of the statutory inquiry." *Id.* at 1218.

In a portion of the opinion joined by only four Justices, the plurality addressed the issue of retaining the categorical approach for § 16(b).  *See Dimaya*, 138 S. Ct. at 1216–18 (plurality opinion).  The plurality detailed a number of reasons why that approach was appropriate.  First, as in *Johnson*, the government conceded that the appropriate construction of the statute required applying the categorical approach. *Id.* at 1217.  Second, the plurality concluded that abandoning the categorical approach would raise Sixth Amendment concerns about judges making findings of fact that properly belong to juries. *Id.*  Third, the plurality reasoned that § 16(b)'s text "demands a categorical approach." *Id.*  In particular, the plurality noted that the inquiry under § 16(b) calls on a court to examine an "offense" that "by its nature" involves a requisite risk of force. *Id.*  As the

Case No. 15-CR-00285-LHK
ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN OFFENSE

plurality explained, "[t]he upshot of all th[e] textual evidence is that § 16's residual clause—like [§ 924(e)(2)(B)(ii)]'s, except still more plainly—has no 'plausible' fact-based reading." *Id.* at 1218. Finally, "the 'utter impracticability'—and associated inequities—of such [a non-categorical] interpretation is as great" as in *Johnson*. *Id.* Therefore, the plurality concluded, there is "no ground for discovering a novel interpretation of § 16(b) that would remove us from the dictates of *Johnson*." *Id.*

Justice Gorsuch concurred in part and concurred in the judgment. *Id.* at 1234 (Gorsuch, J., concurring in part and concurring in the judgment). As to the question about the categorical approach, he leaned more heavily on the government's concession that the statute compels a categorical approach. *See id.* at 1232 (noting that "no party before us has argued for a different way to read these statutes in combination," "our precedent seemingly requires this approach," and "the government itself has conceded (repeatedly) that the law compels it"). Nevertheless, he did note some force in the textual arguments supporting an approach that asks whether the crime of conviction ordinarily or always carries a risk of physical force. *Id.* at 1233. He emphasized the phrase "by its nature" and stated that "[p]lausibly, anyway, the word 'nature' might refer to an inevitable characteristic of the offense; one that would present itself automatically, whenever the statute is violated." *Id.* (citing 10 Oxford English Dictionary 247 (2d ed. 1989)). Ultimately, though, Justice Gorsuch would await another case to address these interpretative issues. *Id.* Still, he joined the majority in concluding that § 16(b) is "so vague that reasonable people cannot understand its terms and judges do not know where to begin in applying it." *Dimaya*, 138 S. Ct. at 1233 (Gorsuch, J., concurring in part and concurring in the judgment).

### 3. Application of *Johnson* and *Dimaya* to the Instant Case – § 924(c)(3)(B)

With the principles of *Johnson* and *Dimaya* in mind, this Court now turns to Chavez's contention that § 924(c)(3)(B) is unconstitutionally vague. Chavez argues that *Johnson* and *Dimaya* are dispositive as to the question whether § 924(c)(3)(B) is void for vagueness. *See* Mot. at 4–5 ("By straightforward syllogistic reasoning, it follows that the § 924(c) residual clause, like

16

United States District Court
Northern District of California

its counterpart in ACCA and its twin in § 16(b), is also unconstitutionally vague."); Reply at 4 (stating that *Dimaya* compels the "conclu[sion] that the residual clause of § 924(c)(3)(B) is void for vagueness"). The government disagrees, asserting that the provision at issue here is distinguishable from the provisions at issue in *Johnson* and *Dimaya*. Opp. at 4–12. The bulk of the government's argument is foreclosed by Ninth Circuit precedent.

This Court begins with a few observations about the scope of the constitutional challenge in the instant case. Crucially, the language of § 16(b) at issue in *Dimaya* is virtually identical to the language of § 924(c)(3)(B) at issue here. Specifically, § 16(b) provides:

> The term "crime of violence" means any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Section 924(c)(3)(B) provides in relevant part:

> [T]he term "crime of violence" means an offense that is a felony and that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The sole distinguishing features between these two provisions are: (1) that § 16(b) refers to "any other offense" while § 924(c)(3)(B) refers to "an offense," and (2) that § 16(b) includes an extra comma before the phrase "by its nature." The government does not argue that those minor differences have any bearing on the vagueness analysis. Indeed, the Ninth Circuit has recognized that "because the wording of [§ 16 and § 924(c)(3)] is virtually identical, [courts] interpret their plain language in the same manner." *United States v. Benally*, 843 F.3d 350, 354 (9th Cir. 2016) (footnote omitted); *see also Park v. I.N.S.*, 252 F.3d 1018, 1022 (9th Cir. 2001) (importing a holding regarding § 924(c)(3)(B) into the context of § 16(b) based on "the identical definitions in the two statutory schemes"), *overruled on other grounds by Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006). Other circuits have similarly treated case law regarding either § 16(b) or § 924(c)(3)(B) as guiding analysis of the other. *United States v. Salas*, 889 F.3d 681, 685 (10th Cir. 2018); *In re Hubbard*, 825 F.3d 225, 231 (4th Cir. 2016).

Unable to rely on any variance in wording, the government instead focuses on one of the two premises underlying the *Johnson* and *Dimaya* decisions. As the U.S. Supreme Court in *Dimaya* recognized, the provisions at issue in that case and in *Johnson* had two features that, in combination, render the provisions unconstitutionally vague: (1) both mandate a categorical approach under which courts must disregard real-world conduct in favor of attempting to identify the "ordinary case," and (2) both do not sufficiently define the requisite threshold level of risk. *Id.* at 1216. The U.S. Supreme Court emphasized that the level-of-risk issue would not be "alone problematic," but instead that the constitutional problem resulted from "layering such a[n] [imprecise] standard on top of the requisite 'ordinary case' inquiry." *Id.* at 1214–15. Drawing on this distinction, the government argues that § 924(c)(3)(B) is not constitutionally infirm because that statutory subsection does not require application of the categorical approach. Opp. at 6–12. The government is incorrect.

As a preliminary matter, it is important to recognize that the government seeks to treat as different two statutory provisions—§ 16(b) and § 924(c)(3)(B)—that are materially indistinguishable in text. Courts typically reject such efforts because "the same words or phrases are presumed to have the same meaning when used in different parts of a statute." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1061 (9th Cir. 2008) (quoting *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 704 n.11 (9th Cir. 1981)). To be sure, both the plurality and the concurrence in *Dimaya* relied on the government's concession that the categorical approach applies to § 16(b). *See Dimaya*, 138 S. Ct. at 1217 (plurality opinion); *id.* at 1232–33 (Gorsuch, J., concurring in part and concurring in the judgment). However, the government made the same concession earlier in this case. Specifically, in opposition to Chavez's initial motion to dismiss, the government admitted that § 924(c)(3)(B)'s language "triggers application of the categorical approach, which looks at offense elements." ECF No. 279 at 11. As a general matter, the law disfavors parties taking contrary positions at different points in the litigation. *See* 18B Charles Alan Wright et al., Federal Practice and Procedure § 4477 ("Absent any good explanation, a party should not be

Case No. 15-CR-00285-LHK
ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN OFFENSE

1  allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage

2  by pursuing an incompatible theory.").

3       In any event, the government's argument is foreclosed by Ninth Circuit precedent.  Since

4  at least 1995, the Ninth Circuit repeatedly has made clear that the categorical approach applies to

5  § 924(c)(3), including the residual clause in § 924(c)(3)(B).  *See Benally*, 843 F.3d at 352–53

6  (applying the categorical approach for a conviction under § 924(c)); *Piccolo*, 441 F.3d at 1086–87

7  ("[I]n the context of crime-of-violence determinations under § 924(c), our categorical approach

8  applies regardless of whether we review a current or prior crime."); *United States v. Amparo*, 68

9  F.3d 1222, 1224 (9th Cir. 1995) (explaining that "this circuit has adopted a categorical approach to

10  determining which offenses are included under section 924(c) as 'crimes of violence'").  The

11  government does not identify any subsequent developments in U.S. Supreme Court or Ninth

12  Circuit law that call these precedents into doubt.  Instead, the government simply notes its

13  "belie[f] that the Ninth Circuit's current precedent was wrongly decided."  Opp. at 7.  However, a

14  Ninth Circuit decision remains binding authority unless its "reasoning or theory . . . is clearly

15  irreconcilable with the reasoning or theory of intervening higher authority."  *United States v.*

16  *Slade*, 873 F.3d 712, 715 (9th Cir. 2017) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir.

17  2003) (en banc)).

18       Moreover, the Ninth Circuit's holding that the categorical approach applies to the residual

19  clause in § 924(c)(3)(B) is firmly rooted in the statutory text and case law.  Section 924(c)(3)(B)

20  defines "crime of violence" as "an offense that is a felony and that by its nature, involves a

21  substantial risk that physical force against the person or property of another may be used in the

22  course of committing the offense."  That definition begins by referring to an "offense that is a

23  felony."  As the U.S. Supreme Court has stated, statutory references to a "felony" or "offense" are

24  "read naturally" to "refer to a generic crime as *generally* committed."  *Nijhawan v. Holder*, 557

25  U.S. 29, 33–34 (2009); *see also Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004) (noting that § 16 "directs

26  our focus to the 'offense' of conviction . . . rather than to the particular facts").  In other words,

27

28

United States District Court
Northern District of California

such statutory references often call for an application of the categorical approach. *See Nijhawan*, 557 U.S. at 34. Although the same words may "sometimes refer to the specific acts in which an offender engaged on a specific occasion," *id.* at 33–34, the statute usually contains some affirmative indication that Congress intended courts to examine the defendant's actual conduct. *See Descamps*, 570 U.S. at 267–68 ("If Congress had wanted to increase a sentence based on the facts of a prior offense, it presumably would have said so; other statutes, in other contexts, speak in just that way."). For example, in *United States v. Hayes*, the U.S. Supreme Court concluded that a categorical approach was inappropriate for a statute referring to prior offenses "committed by" specified persons. 555 U.S. 415, 421 (2009). Likewise, in *Nijhawan*, the U.S. Supreme Court adopted a non-categorical approach for a statute describing an offense "in which the loss to the victim or victims exceeds $10,000." 557 U.S. at 34, 36. In contrast, § 924(c)(3)(B) contains no similar allusions to individualized facts about the circumstances or commission of a crime.

The government's argument immediately skips from § 924(c)(3)(B)'s opening language ("offense that is a felony") to the closing language and reads the last three words ("committing the offense") out of context to argue for a contrary result. Opp. at 7–8. The problem for the government is that the relevant phrase—"committing the offense"— does not instruct courts to apply a fact-based approach but is instead linked to a court's evaluation of substantial risk. In the statute's words, the court's task is to determine whether the offense poses "a substantial risk that physical force . . . may be used in the course of *committing the offense*." 18 U.S.C. § 924(c)(3)(B) (emphasis added). In this way, the phrase "committing the offense," which appears as part of the larger phrase "in the course of committing the offense," operates as a temporal limit on a court's assessment of risk. *See Dimaya*, 138 S. Ct. at 1219 ("All that the phrase excludes is a court's ability to consider the risk that force will be used after the crime has entirely concluded . . . ."). This Court fails to see how that phrase, which serves only to restrict the temporal scope of a court's consideration of the requisite level of risk, informs the question whether the statute is subject to the categorical approach.

20

More fundamentally, § 924(c)(3)(B)'s use of "by its nature" creates a clear directive that the categorical approach is proper. Turning back to the statutory language, § 924(c)(3)(B) tells courts to consider whether "an offense . . . *by its nature*, involves" the requisite risk of force. The phrase "by its nature" modifies the word "offense." In *Dimaya*, a plurality of the U.S. Supreme Court explained that the phrase "by its nature" in § 16(b) makes clear that the statute "tells courts to figure out what an offense normally—or . . . 'ordinarily'—entails, not what happened to occur on one occasion." *Dimaya*, 138 S. Ct. at 1217–18 (plurality opinion); *see also United States v. David H.*, 29 F.3d 489, 494 (9th Cir. 1994) ("[T]he 'by its nature' language . . . 'implies that the generic, rather than the particular, nature of the predicate offense is determinative in defining a crime of violence.'" (citation omitted)). In his concurrence in *Dimaya*, Justice Gorsuch envisions an interpretative option that goes even farther than the "ordinary case" approach and asks "whether the defendant's crime of conviction *always* [involves a risk of physical force]." 138 S. Ct. at 1233 (Gorsuch, J., concurring in part and concurring in the judgment). Although the definition of "by its nature" could support Justice Gorsuch's interpretation, this Court need not reach this question because neither party makes this argument.

The Supreme Court's analysis is supported by common usage and legal parlance, which define an offense's "nature" by its "normal and characteristic quality." Webster's Third New International Dictionary 1507 (2002); *see also* Black's Law Dictionary 1127 (9th ed. 2009) (defining "nature" as "[a] fundamental quality that distinguishes one thing from another; the essence of something"). This focus on ordinary or usual qualities demands the categorical approach. That command becomes even stronger in light of the fact that the statute does not merely reference the offense's "nature," but instead focuses on whether the offense "by its nature" has a particular quality. The phase "by its nature" is regularly understood to mean that "things of that type always have that characteristic." *By its nature*, Collins English Dictionary, https://www.collinsdictionary.com/us/dictionary/english/by-its-nature (last visited July 27, 2018).

21

Again, this attention on definitional characterizations calls for application of the categorical approach.

The government attempts to show that the word "nature" is sometimes used to denote a fact-based inquiry. For example, the government points to 18 U.S.C. § 3553(a)(1), in which (the government says) "Congress has . . . instructed sentencing courts to consider 'the nature and circumstances of the offense'—naturally understood as the defendant's own conduct—in determining the appropriate sentence in a federal criminal case." Opp. at 8. This Court questions whether the word "nature" in § 3553(a)(1) actually does the work that the government suggests; one plausible interpretation is that "nature . . . of the offense" refers to inherent characteristics while "circumstances of the offense" refers to the defendant's particular situation. In any event, even if the government is correct that "nature" can sometimes bear a circumstance-specific meaning, it cannot do so in the context of § 924(c)(3)(B) for multiple reasons. First, under the government's interpretation of "nature," the phrase "by its nature" appears to play no role in the statute. That is, Congress could have achieved the same result by writing a statute covering any "offense . . . that involves a substantial risk." As the Ninth Circuit has observed, "had Congress intended a case-by-case inquiry into whether the felony as committed constituted a crime of violence, there would have been no need for the phrase 'by its nature.'" *David H.*, 29 F.3d at 494 (alteration and citation omitted). Courts generally avoid interpretations that render statutory language meaningless. *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011).

Second, and relatedly, the government's interpretation of "nature" fails to take into account the entirety of the phrase "by its nature." As noted above, that phrase implicates inherent qualities or characteristics. The government nowhere offers a competing interpretation or otherwise explains why that accepted meaning does not apply in this context. Tellingly, neither 18 U.S.C. § 3553(a)(1) nor any of the other examples cited in the government's opposition use the phrase "by its nature." *See* Opp. at 8. Even more telling, in the instant case, the government itself recognized the intuitive force behind the notion that the phrase "by its nature" triggers the

categorical approach. Pre-*Dimaya*, the government wrote that "[t]he phrase 'by its nature' in Section 924(c)(3)(B) simply triggers application of the categorical approach, which looks at offense elements." ECF No. 279 at 11. Post-*Dimaya*, the government has changed its position. However, this Court agrees with the government's earlier logic—namely, that § 924(c)(3)(B)'s use of "by its nature" plainly invokes the categorical approach.

The government's argument regarding § 924(c)(3)(B)'s use of the word "involves" is equally unavailing. The government cites to provisions reciting the term "involving" that were adopted as part of the Comprehensive Crime Control Act of 1984, a bill in which § 924(c) was amended. *See, e.g.*, Pub. L. No. 98-473, § 4243(d), 98 Stat. 1837, 2059 (1984) ("an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage"); *id.* § 502, 98 Stat. 2068 (drug offenses "involving" specific quantities and types of drugs); *id.* § 1952B, 98 Stat. 2137 ("crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury"). The government argues that because all of these provisions require courts to consider a defendant's underlying conduct, § 924(c)(3)(B) should be construed in the same manner. Opp. at 8. The government's argument on this score merely compounds the above-identified errors. In particular, none of the provisions that the government mentions use the phrase "by its nature." That absence underscores why it is proper to treat § 924(c)(3)(B) differently than the government's identified provisions. Importantly, the government does not contend that § 924(c)(3)(B)'s use of the word "involves" precludes applying the categorical approach. Nor could the government make that argument, given that the now-void residual clause contained in § 924(e)(2)(B)(ii) identically uses the word "involves" and also has been held to require the categorical approach. *See Johnson*, 135 S. Ct. at 2562 (noting that the categorical approach was "adopted in [the U.S. Supreme Court's decision in] *Taylor*" and "reaffirmed in each of [the Supreme Court's] four residual-clause cases").[4]

_____

[4] The government incorrectly suggests that the U.S. Supreme Court's decision in *Taylor* "relied on the absence of the word 'involves' as indicating that a categorical approach is required." Opp. at 8. That is not what the Supreme Court did in *Taylor*. Instead, the Supreme Court contrasted

23

1    Faced with the multiple clear commands in § 924(c)(3)(B)'s text for the categorical

2    approach, the government turns to contextual considerations.  The government first looks to

3    § 924(c)(3)(B)'s neighboring provision, § 924(c)(3)(A).  As discussed above, § 924(c)(3)(A)

4    defines "crime of violence" as "an offense that . . . has as an element the use, attempted use, or

5    threatened use of physical force against the person or property of another."  The government

6    suggests that a comparison of § 924(c)(3)(A) and § 924(c)(3)(B) raises two issues, but neither is

7    persuasive.

8    First, the government contrasts § 924(c)(3)(A)'s explicit reference to "elements" with

9    § 924(c)(3)(B)'s omission of a comparable word.  Opp. at 9.  The government suggests that this

10   distinction makes § 924(c)(3)(A) a better candidate for the categorical approach.  Opp. at 9.

11   However, the government fails to acknowledge that the form of the categorical approach under

12   § 924(c)(3)(A) is different than the form under § 924(c)(3)(B), as the former focuses on elements

13   while the latter focuses on the ordinary case.  *Dimaya*, 138 S. Ct. at 1211 n.1.  Moreover, this

14   Court has already laid out the various reasons requiring adoption of the categorical approach for

15   the residual clause in § 924(c)(3)(B).  That § 924(c)(3)(A) and § 924(c)(3)(B) employ differing

16   language to mandate similar categorical approaches is not problematic.  *See Kirtsaeng v. John*

17   *Wiley & Sons, Inc.*, 568 U.S. 519, 540 (2013) ("We are not aware, however, of any canon of

18   interpretation that forbids interpreting different words used in different parts of the same statute to

19   mean roughly the same thing.").

20   Second, the government implies that if § 924(c)(3)(A) and § 924(c)(3)(B) both require a

21   categorical approach, then § 924(c)(3)(B) would be wholly redundant of § 924(c)(3)(A).  Opp. at

22   9.  This Court disagrees.  It is true that, where possible, courts should not read statutes "so as to

23   render superfluous other provisions in the same enactment."  *Freytag v. C.I.R.*, 501 U.S. 868, 877

24

25   _____

26   statutory language that asks whether a crime has as an element the use of force with hypothetical
     language that asks whether a crime, "*in a particular case*, involves" the use of force.  *Taylor*, 495
27   U.S. at 600 (emphasis added).  The Supreme Court nowhere suggested that the word "involves"
     necessarily specifies that a categorical approach is appropriate.

24

28   Case No. 15-CR-00285-LHK
     ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN
     OFFENSE

(1991) (quoting *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990)). However, the U.S. Supreme Court has recognized that "[s]ome overlap in criminal provisions is, of course, inevitable." *Marinello v. United States*, 138 S. Ct. 1101, 1107 (2018). Here, there is no doubt that some offenses would qualify as "crimes of violence" under both § 924(c)(3)(A) and § 924(c)(3)(B). Nevertheless, the forms of the categorical approach under these two statutory provisions are different, and the substantive standards are sufficiently distinct that they both sweep in conduct that the other provision does not. This Court concludes that there is no redundancy in adopting the categorical approach for the residual clause in § 924(c)(3)(B).

The government next draws on a higher-level distinction between § 924(c)(3)(B), the provision at issue here, and § 924(e)(2)(B)(ii) and § 16(b), the provisions at issue in *Johnson* and *Dimaya*, respectively. The government notes that unlike § 924(e)(2)(B)(ii) and § 16(b), which "require the classification of prior convictions," § 924(c)(3)(B) "applies only to conduct giving rise to the current prosecution." Opp. at 10. In the government's view, this distinction significantly weakens the case for applying the categorical approach in the context of § 924(c)(3)(B). Opp. at 10–11. The government's argument, though, is expressly foreclosed by Ninth Circuit precedent. In *Piccolo*, the Ninth Circuit unequivocally stated that "in the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime." 441 F.3d at 1086–87. Declining to distinguish between current and prior crimes advances the "general commitment to deciding rules of law on categorical grounds." *Id.* at 1087. It is also reflective of the fact that the statutory text provides no basis for drawing such a line between current and prior crimes. *See id.*; *see also United States v. Johnson*, 953 F.2d 110, 114 (4th Cir. 1991) (explaining that the "distinction between prior offenses and the instant offense" is "unsupported by the language of the [provision]"). In the instant case, the government does not attempt to ground its rejection of the categorical approach for § 924(c)(3)(B) but not § 924(e)(2)(B)(ii) and § 16(b) in any textual difference between the three statutes.

United States District Court
Northern District of California

The government rightly notes that some of the principles animating adoption of the categorical approach are inapplicable or less forceful when examining current offenses. Opp. at 10–11. In *Taylor*, the U.S. Supreme Court offered two additional grounds beyond the general support in the textual language that tipped the scales in favor the categorical approach: (1) the categorical approach avoids Sixth Amendment concerns that would arise from courts making findings of fact that enhance sentences, and (2) the categorical approach averts "the practical difficulties and potential unfairness of a factual approach." 495 U.S. at 601–02; *see also Descamps*, 570 U.S. at 267 (listing the justifications in *Taylor*). The Third Circuit has stated that these two rationales are not implicated "[w]hen the predicate offense . . . and the § 924(c) offense are contemporaneous and tried to the same jury" because the court may "determine the basis for a defendant's predicate conviction" without "finding any new facts which are not of record in the case before it." *United States v. Robinson*, 844 F.3d 137, 141, 143 (3d Cir. 2016), *cert. denied*, 138 S. Ct. 215 (2017). The Third Circuit's statements do not change the analysis here. Notably, the Third Circuit case dealt with the elements clause and did not address the residual clause. *Id.* at 141 ("[W]e will not address Robinson's challenge to the residual clause."). Moreover, the Ninth Circuit has recognized that the absence of the workability issues identified in *Taylor* does not preclude adoption of the categorical approach. *Piccolo*, 441 F.3d at 1087; *Amparo*, 68 F.3d at 1225. At bottom, policy considerations (or lack thereof) cannot overcome § 924(c)(3)(B)'s textual instruction to use the categorical approach.

The government also urges this Court to apply the canon of constitutional avoidance. Opp. at 11–12. That canon provides that "when the constitutionality of a statute is assailed, if the statute be reasonably susceptible of two interpretations, by one of which it would be unconstitutional and by the other valid, it is [a court's] plain duty to adopt that construction which will save the statute from constitutional infirmity." *United States ex rel. Attorney Gen. v. Del. & Hudson Co.*, 213 U.S. 366, 407 (1909); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300 (2001) (espousing a court's obligation to adopt a reasonable alternative interpretation "if an otherwise

26

acceptable construction of a statute would raise serious constitutional problems"). In the instant case, this Court has no occasion to apply the constitutional avoidance canon because the statutory text is not "susceptible of more than one construction." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)). For the reasons previously discussed, the text of § 924(c)(3)(B) requires a categorical approach, not a fact-based approach. A plurality of the U.S. Supreme Court has already concluded that § 16(b)'s nearly identical residual clause "has no 'plausible' fact-based reading." *Dimaya*, 138 S. Ct. at 1218 (plurality opinion). The same holds true here. "In the absence of more than one plausible construction, the canon [of constitutional avoidance] simply '"has no application."'" *Jennings*, 138 S. Ct. at 842 (quoting *Warger v. Shauers*, 135 S. Ct. 521, 529 (2014)). Therefore, this Court rejects the government's constitutional avoidance argument.

Once it is accepted that the categorical approach applies, the residual clause in § 924(c)(3)(B) must be deemed unconstitutionally vague. Section 924(c)(3)(B) suffers from the same two features that rendered the provisions at issue in *Johnson* and *Dimaya* unconstitutionally vague. First, § 924(c)(3)(B) creates "'grave uncertainty about how to estimate the risk posed by a crime' because it 'tie[s] the judicial assessment of risk' to a hypothesis about the crime's 'ordinary case.'" *Dimaya*, 138 S. Ct. at 1213 (quoting *Johnson*, 135 S. Ct. at 2557). Second, § 924(c)(3)(B) "le[aves] unclear what threshold level of risk [makes] any given crime" a crime of violence. *Dimaya*, 138 S. Ct. at 1214 (citing *Johnson*, 135 S. Ct. at 2558). "By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a" crime of violence, the residual clause in § 924(c)(3)(B) violates the guarantee of due process. *Johnson*, 135 S. Ct. at 2558; *see also Dimaya*, 138 S. Ct. at 1223 ("Because the clause had both an ordinary-case requirement and an ill-defined risk threshold, it necessarily 'devolv[ed] into guesswork and intuition,' invited arbitrary enforcement, and failed to provide fair notice." (quoting *Johnson*, 135 S. Ct. at 2559)).

27

Only one circuit—the Tenth Circuit—has addressed the constitutionality of the residual clause in § 924(c)(3)(B) since the issuance of *Dimaya*. In that case, the Tenth Circuit concluded that § 924(c)(3)(B) "is likewise unconstitutionally vague." *United States v. Salas*, 889 F.3d 681, 686 (10th Cir. 2018). The Tenth Circuit explained that whether a crime constitutes a "crime of violence" under § 924(c)(3)(B) is a legal question subject to the categorical approach. *Salas*, 889 F.3d at 686. Thus, the Tenth Circuit reasoned that "§ 924(c)(3)(B) possesses the same features as [§ 924(e)(2)(B)(ii)'s] residual clause and § 16(b) that combine to produce 'more unpredictability and arbitrariness than the Due Process Clause tolerates.'" *Id.* (quoting *Dimaya*, 138 S. Ct. at 1223 (quoting *Johnson*, 135 S. Ct. at 2558)). Accordingly, "*Dimaya*'s reasoning for invalidating § 16(b) applies equally to § 924(c)(3)(B)." *Id.*

Another circuit—the Seventh Circuit—reached the same result before *Dimaya*. In *United States v. Cardena*, the Seventh Circuit confronted the issue whether the residual clause in § 924(c)(3)(B) is unconstitutionally vague. 842 F.3d 959, 995–96 (7th Cir. 2016), *cert. denied*, 138 S. Ct. 247 (2017). In an earlier case, the Seventh Circuit had ruled that § 16(b) is unconstitutionally vague under *Johnson*. *United States v. Vivas-Ceja*, 808 F.3d 719, 720 (7th Cir. 2015). In light of that holding, the Seventh Circuit easily concluded that § 924(c)(3)(B) is also unconstitutionally vague. *Cardena*, 842 F.3d at 996. As the Seventh Circuit put it, because "[t]he clause invalidated in *Vivas–Ceja* [§ 16(b)] is the same residual clause contained in the provision at issue, 18 U.S.C. § 924(c)(3)(B)," "the residual clause in 18 U.S.C. § 924(c)(3)(B) is also unconstitutionally vague." *Id.* That holding remains intact after *Dimaya*.

Multiple other circuits had upheld § 924(c)(3)(B)'s constitutionality before *Dimaya*. *See United States v. Garcia*, 857 F.3d 708, 711 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 641 (2018); *United States v. Eshetu*, 863 F.3d 946, 955 (D.C. Cir. 2017); *Ovalles v. United States*, 861 F.3d 1257, 1265 (11th Cir. 2017), *reh'g en banc granted, opinion vacated*, 889 F.3d 1259 (11th Cir. 2018); *United States v. Prickett*, 839 F.3d 697, 699 (8th Cir. 2016), *cert. denied*, 138 S. Ct. 1976 (2018); *United States v. Hill*, 832 F.3d 135, 150 (2d Cir. 2016), *amended and superseded by*

28

*United States v. Hill*, 890 F.3d 51 (2d Cir. 2018); *United States v. Taylor*, 814 F.3d 340, 379 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 1975 (2018).  However, none of those circuits was faced with binding authority holding § 16(b) unconstitutional (and many had found § 16(b) constitutional). For the most part, the decisions relied on distinctions between § 924(e)(2)(B)(ii) and § 16(b) that were rejected in *Dimaya*.  Thus, their reasoning likely does not remain valid in the wake of *Dimaya*.

The one circuit that has disagreed is the Sixth Circuit.  Before the U.S. Supreme Court's decision in *Dimaya*, the Sixth Circuit concluded that § 924(c)(3)(B) is constitutional while § 16(b) is not.  *Compare Shuti v. Lynch*, 828 F.3d 440, 446 (6th Cir. 2016) (ruling that § 16(b) is unconstitutionally vague), *cert. denied sub nom. Sessions v. Shuti*, 138 S. Ct. 1977 (2018), *with Taylor*, 814 F.3d at 375–76 (6th Cir.) (rejecting a void-for-vagueness challenge to § 924(c)(3)(B)). The Sixth Circuit's central justification for these seemingly inconsistent positions is that unlike § 924(e)(2)(B)(ii) and § 16(b), "which require a categorical approach to stale predicate convictions," § 924(c) "is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding." *Shuti*, 828 F.3d at 449.  It is unclear whether the Sixth Circuit's earlier decision in *Taylor* actually placed any weight on the distinction between current and prior offenses.  Most of the analysis in *Taylor* raises the same textual distinctions that were later rejected by the U.S. Supreme Court in *Dimaya*.  *See Taylor*, 814 F.3d at 376–78.  This Court finds the distinction between current and prior offenses unavailing because the Sixth Circuit has recognized that § 924(c)(3)(B), and particularly its use of the phrase "by its nature," compels a categorical approach.  *Taylor*, 814 F.3d at 377 ("The phrase 'by its nature' indicates that a court's analysis of whether there is a risk of force is confined to the offense itself.").  This Court agrees with the Tenth Circuit that the Sixth Circuit's ground for distinguishing § 16(b) and § 924(c) "is a distinction without a difference . . . and is incorrect to the extent it suggests that whether an offense is a crime of violence depends on the defendant's

Case No. 15-CR-00285-LHK
ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN OFFENSE

1    specific conduct." *See Salas*, 889 F.3d at 686. That conclusion is especially powerful when read

2    in light of § 924(c)(3)(B)'s textual commitment to applying the categorical approach.

3        The majority of district courts in this circuit have held that § 924(c)(3)(B) is

4    unconstitutionally vague, both before and after the U.S. Supreme Court's decision in *Dimaya*.

5    *See, e.g.*, *United States v. Sangalang*, No. 08-CR-00163-JCM, 2018 WL 2670412, at *4 (D. Nev.

6    June 4, 2018); *United States v. Bell*, 158 F. Supp. 3d 906, 921 (N.D. Cal. 2016); *United States v.*

7    *Baires-Reyes*, 191 F. Supp. 3d 1046, 1053 (N.D. Cal. 2016); *United States v. Lattanaphom*, 159 F.

8    Supp. 3d 1157, 1164 (E.D. Cal. 2016); *United States v. Bustos*, No. 08-CR-00297-LJO, 2016 WL

9    6821853, at *5 (E.D. Cal. Nov. 17, 2016); *United States v. Smith*, 215 F. Supp. 3d 1026, 1035 (D.

10   Nev. 2016).

11       A cluster of district courts in the Southern District of California reached the opposite

12   conclusion before the U.S. Supreme Court's decision in *Dimaya*. *See, e.g.*, *United States v.*

13   *Tavarez-Alvarez*, No. 10-CR-3510-BTM, 2017 WL 2972460, at *4 (S.D. Cal. July 11, 2017);

14   *United States v. Lott*, No. 16-CV-01575 WQH, 2017 WL 553467, at *3 (S.D. Cal. Feb. 9, 2017);

15   *Hernandez v. United States*, No. 10-CR-03173-H, 2016 WL 7250676, at *3 (S.D. Cal. Nov. 8,

16   2016).

17       The picture of district courts outside this circuit before the U.S. Supreme Court's decision

18   in *Dimaya* is slightly more varied. *Compare, e.g.*, *United States v. Herr*, No. 16-CR-10038-IT,

19   2016 WL 6090714, at *3 (D. Mass. Oct. 18, 2016) (finding § 924(c)(3)(B) unconstitutionally

20   vague), *and United States v. Edmundson*, 153 F. Supp. 3d 857, 864 (D. Md. 2015) (same), *with*

21   *United States v. Green*, No. 15-CR-00526-RDB, 2016 WL 277982, at *5 (D. Md. Jan. 22, 2016)

22   (finding § 924(c)(3)(B) not unconstitutionally vague), *aff'd*, 684 F. App'x 300 (4th Cir. 2017), *and*

23   *United States v. Tsarnaev*, 157 F. Supp. 3d 57, 74 (D. Mass. 2016) (same).

24       The government hones in on one district court case from this district issued before the U.S.

25   Supreme Court's *Dimaya* decision. Opp. at 5–6. In that pre-*Dimaya* case, Judge Alsup concluded

26   that § 924(c)(3)(B) is not unconstitutionally vague. *See* Order Denying Section 2255 Motion at 9,

27

28   Case No. 15-CR-00285-LHK
     ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN
     OFFENSE

*United States v. Carcamo*, No. 08-CV-00730-WHA (N.D. Cal. July 31, 2017), ECF No. 6348. In particular, Judge Alsup relied on a distinction between § 924(c)(3)(B) and the provisions at issue in *Johnson* and *Dimaya*:

> In *Johnson* and *Dimaya*, the statutes under review required courts to consider, in the abstract, whether crimes carried a risk of the use of physical force. In contrast, Section 924(c)(3)(B) asks courts to consider only circumstances in which the defendant possessed a firearm "during and in relation to" or "in furtherance of" a crime, and to determine whether that crime involves "a substantial risk [of] physical force." In other words, under Section 924(c)(3)(B), the definition of the crime is intertwined with the possession of a firearm, unlike the statutes at issue in *Johnson* and *Dimaya*.

*Id.* at 8. For this reason, Judge Alsup concluded that "[§ 924(c)(3)(B)] is not so vague that an ordinary citizen would have trouble understanding it, nor does it give enforcement authorities excessive discretion in how to apply the law." *Id.* at 9; *see also Ovalles*, 861 F.3d at 1265–66 ("The required 'nexus' between the § 924(c) firearm offense and the predicate crime of violence makes the crime of violence determination more precise and more predictable.").

Although Judge Alsup pinpoints a distinction between § 924(c)(3)(B) and the provisions at issue in *Johnson* and *Dimaya*, that distinction does not cure any of § 924(c)(3)(B)'s indeterminacy problems. The Tenth Circuit addressed this precise argument, explaining that "th[e] firearm requirement simply means that the statute will apply in fewer instances, not that it is any less vague." *Salas*, 889 F.3d at 685. Like the Tenth Circuit, this Court does not believe that requiring a sufficient nexus to a firearm remedies either of the two features that rendered the provisions at issue in *Johnson* and *Dimaya* unconstitutionally vague. *See id.* This Court respectfully disagrees with Judge Alsup's decision and elects to follow the many district courts in this circuit that have determined that § 924(c)(3)(B) is unconstitutionally vague under the reasoning of *Johnson* and *Dimaya*.

The government's last argument largely tries to achieve indirectly what it cannot achieve directly. Citing the proposition that "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,"

31

*Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (alteration and citation omitted), the government argues that "Chavez cannot press a vagueness challenge because § 924(c)(3)(B) is not unconstitutionally vague as applied to him." Opp. at 12 (capitalization omitted). Essentially, the government asks this Court to disregard the categorical approach and find that Chavez's five charged conspiracies are "conduct that falls within the 'core' of § 924(c)(3)(B)." *Id.* at 13. However, the categorical approach by design disregards "the particular facts underlying the defendant's own conviction." *Dominguez-Maroyoqui*, 748 F.3d at 920. The government cannot circumvent the categorical approach simply by reframing the issue. This Court therefore rejects the government's attempt to avoid the categorical approach required by § 924(c)(3)(B) and to override the conclusion that § 924(c)(3)(B) is unconstitutionally vague under the reasoning of *Johnson* and *Dimaya*.

## IV.     CONCLUSION

For the foregoing reasons, this Court GRANTS Chavez's renewed motion to dismiss Counts 4 and 7 for failure to state an offense.

**IT IS SO ORDERED.**


Dated: July 27, 2018

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 15-CR-00285-LHK
ORDER GRANTING RENEWED MOTION TO DISMISS COUNTS 4 AND 7 FOR FAILURE TO STATE AN OFFENSE