UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR SKATES,<br><br>Defendant. | Case No. 15-CR-00285-LHK<br><br>**ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON**<br><br>Re: Dkt. No. 591 |

Before the Court is the United States of America's ("the government") *Daubert* motion to exclude the expert testimony of Joshua Mason, filed on November 14, 2018. ECF No. 591 ("Mot."). Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES in part the government's *Daubert* motion to the extent the government challenges Mr. Mason's expert disclosure pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C). The Court DENIES in part the government's Federal Rule of Evidence 702 challenge to the extent it seeks to categorically exclude Mr. Mason's testimony, but GRANTS in part to the extent it seeks to exclude Mr. Mason from testifying as to the Salinas-based Norteño street cliques at issue in the instant case.

1

## I. BACKGROUND

### A. Procedural Background Regarding Skates's Disclosure of Mr. Mason

On November 1, 2017, the Court set a May 1, 2018 deadline for defense expert disclosures. ECF No. 249 at 2. At a hearing on May 30, 2018, Defendant Victor Skates ("Skates") asked the Court for additional time. ECF No. 353. The Court granted Skates's request and set a new expert disclosure deadline of July 1, 2018. ECF No. 354 at 2. On June 29, 2018, Skates notified the government by email that he intended to call eight expert witnesses, including Mr. Mason, whose gang expert testimony is at issue in the instant motion. ECF No. 420-1. Because Skates's disclosures were deficient, the parties met and conferred on July 19, 2018, and Skates provided updated expert disclosures on July 20, 2018. ECF No. 420-2. On July 27, 2018, the parties again met and conferred, and Skates subsequently provided additional disclosures that are not relevant to the motion currently before the Court. ECF No. 438-1.

On August 1, 2018, the government filed a *Daubert* motion challenging the experts, including Mr. Mason, noticed by Skates. ECF No. 420 ("Government's First *Daubert* Motion"). The Court granted in part, denied in part, and denied without prejudice in part the government's motion. ECF No. 455 ("8/24/18 *Daubert* Order"). As to the expert testimony of Mr. Mason, the Court concluded that Skates's disclosures "do not comply with the requirements of Rule 16(b)(1)(C)." *Id.* at 3. The Court ordered Skates to supplement his disclosures with a description of "the witness's opinions" and "the bases and reasons for those opinions" by September 12, 2018. *Id.* at 4.

On September 25, 2018, Skates sent a letter to the government to further supplement his expert disclosures for Mr. Mason. ECF No. 633-1 ("Skates's Supplemental Expert Notice."). In this letter, Skates provided, in relevant part, that:

> Mr. Mason will testify about the history, structure, membership requirements, practices, rules, hierarchy, graffiti, slang, code, signing and colors of Nuestra Familia prison gang. Mr. Mason will offer his opinion about how certain acts of violence affect the standing of the Nuestra Familia as a whole. He will also offer his opinion about how certain acts of violence (including those involved in this case), may impact the standing of an individual member within the Nuestra Familia with respect to other

2

Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON

gangs (including Norteños, Northerners and/or rivals) and within the community. He will offer his opinion regarding how the Nuestra Familia responds to those who have dropped out and those who work with the government. He will testify about the Nuestra Familia's relationship to the "14 bonds."

*See id.* Skates also provided nine numbered paragraphs regarding Mr. Mason's proffered testimony and reiterated his previous disclosures that the Court found insufficient. *See id.*

On November 14, 2018, the government filed the instant Daubert motion to exclude the expert testimony of Mr. Mason. *See* Mot. Defendant Victor Skates ("Skates") opposed on December 3, 2018. ECF No. 633 ("Opp'n"). The government replied on December 5, 2018. ECF No. 640 ("Reply").

### B. Procedural Background Regarding the Government's Disclosure of its Gang Experts

Because the Court finds it relevant to the instant motion, the Court also briefly discusses the procedural background regarding the government's expert disclosures.

Pursuant to this Court's scheduling order, the government provided its expert disclosures on February 1, 2018. ECF No. 254 at 2. The government's letter noticed two gang experts—Correctional Lieutenant Edgar Ramos and Salinas Police Officer James Knowlton. ECF No. 417, Ex. A at 11–19. On August 1, 2018, Defendant Daniel Chavez ("Chavez") filed a motion to preclude gang expert testimony, which Skates joined. ECF No. 417.

On August 27, 2018, the Court denied the motion without prejudice. ECF No. 458. First, the Court held that: "[t]o the extent that Chavez seeks a categorical exclusion of the entirety of Lt. Ramos's and Officer Knowlton's testimony under Federal Rule of Evidence Rule 403 or Rule 702, the Court DENIES his motion as overbroad." *Id.* at 2. "The Ninth Circuit has upheld trial court admission of gang expert testimony over Rule 403 and Rule 702 challenges." *Id.* (*citing United States v. Valencia-Amezcua*, 278 F.3d 901, 908 (9th Cir. 2002) ("[I]t is commonplace that expert testimony regarding the structure of criminal enterprises is admissible to help the jury assess a defendant's involvement in that enterprise."), and *United States v. Mejia*, 545 F.3d 179, 190 (2d Cir. 2008) ("[L]aw enforcement officers may be equipped by experience and training to speak to

3

Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON

the operation, symbols, jargon, and internal structure of criminal organizations.")). The Court also identified "areas in which the gang experts generally may testify[:] . . . The government's gang experts may be permitted to testify regarding gang graffiti, slang, code, signing, tattoos, colors, symbols, areas of influence, membership rules, organizational structure, and hierarchy to the extent that the experts' opinions on those topics are relevant, not unduly prejudicial, and based on relevant training or experience." *Id.* at 6. The Court, however, found the government's disclosures did not distinguish among the five Defendants and were outdated because many case developments had occurred since the government's disclosures, including rulings on motions to suppress, motions for severance, and a renewed motion to dismiss counts in the indictment. *Id.* at 3. Indeed, the government had served expert disclosures on a Defendant who had since pled guilty. *Id.* The Court set September 12, 2018, as the deadline for the government to serve revised expert disclosures that designate which gang expert opinion the government seeks to introduce in its case-in-chief as to each Defendant. *Id.* at 4.

On September 24, 2018, the Court issued its eleventh amended pre-trial and trial scheduling order, and set September 25, 2018, as the deadline for the government's supplemental gang expert disclosure as to Skates. ECF No. 504.

On September 25, 2018, the government filed its supplemental gang expert disclosure as to Skates. ECF No. 510. The government wrote in relevant part that Lt. Ramos will:

> testify about the history, structure, membership requirements, practices, rules, hierarchy, graffiti, slang, code, signing, and colors of the *Nuestra Familia* prison gang. This testimony will include an explanation of what is known by *Nuestra Familia* gang members as the "Fourteen Bonds." He will also testify that Nuestra Familia prison gang members expect that other members will carry out acts of violence in adherence with the "Fourteen Bonds."

ECF No. 510-1 at 1. As for Officer Knowlton, the government wrote:

> Officer Knowlton will testify regarding his familiarity with Norteño street gangs in Salinas, including the street gangs involved in this case, East Las Casitas, Salinas East Market, and Santa Rita, as they existed in the time period alleged in the Superseding Indictment, and the preceding and subsequent years. He will also testify

4
Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON

> regarding these gangs' origins, structure, signs, graffiti, tattoos, colors and symbols, area of influence, rules, and expected contributions from members as set forth in the Superseding Indictment. He will testify about the tattoos that identify members of the gang and other ways that they self-identify.

*Id.* at 7.

## II. DISCUSSION

The government contends that Mr. Mason's testimony should be excluded because (1) Skates fails to provide legally adequate notice of Mr. Mason's proffered opinions pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C), and (2) Mr. Mason has no knowledge, skill, experience, training or education with regard to the Salinas-based Norteño street cliques at issue in this case, and therefore Mr. Mason's proffered testimony is unreliable and irrelevant pursuant to Federal Rule of Evidence 702. Mot. at 1. The Court addresses each argument in turn. For the reasons discussed below, the Court DENIES in part the government's *Daubert* motion to the extent the government challenges Mr. Mason's expert disclosures pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C). The Court DENIES in part the government's Federal Rule of Evidence 702 challenge to the extent it seeks to categorically exclude Mr. Mason's testimony, but GRANTS in part to the extent it seeks to exclude Mr. Mason from testifying as to the Salinas-based Norteño street cliques at issue in the instant case.

### A. Government's Challenge to Mr. Mason Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C)

The government argues first that Mr. Mason's expert opinions should be excluded because Skates continues to fail to provide a sufficient expert disclosure pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C). In particular, the government primarily argues that Skates's expert disclosures regarding Mr. Mason fail to fully summarize Mr. Mason's expert opinions.

Rule 16(b)(1)(C) provides:

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial . . . . This summary must describe the witness's opinions, the bases and reasons for those opinions, and the

5
Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON

witness's qualifications.

Fed. R. Crim. P. 16(b)(1)(C). The purpose of the rule is "to allow counsel to frame a *Daubert* motion (or other motion in limine), to prepare for cross-examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony." *United States v. Cerna*, No. 08-CR-00730-WHA, 2010 WL 2347406, at *1 (N.D. Cal. June 8, 2010).

In his July 20, 2018 notice, Skates provided five paragraphs about Mr. Mason, including a single paragraph describing Mr. Mason's testimony:

> Mr. Mason will testify about the organization and structure of Nuestra [Familia] [("NF")], how it came into being and who were responsible for its creation. He will testify about the various street gangs that follow a general "Northern" orientation and will opine that these groups are less beholden to the prison-based NF, and less controlled by NF, than the proposed government experts suggest. Mr. Mason will point out the documented fights that have developed between such local gangs without suppression of such conflicts by an overarching NF combination and control. Mr. Mason will testify that the rigid control and retribution often attributed to the Norteño subsets and independent "Northern" street gangs is exaggerated. Mr. Mason is intimately familiar with gang culture and practices and his perspective is important to balance the strictly outside law enforcement perspective of the proffered government experts, assuming their testimony is found admissible in whole or in part.

ECF No. 420-2. Following the Court's August 24, 2018 Order that found this disclosure insufficient and required Skates to supplement his expert notice with a description of "the witness's opinions" and "the bases and reasons for [Mr. Mason's] opinions," Skates provided the following additional details about Mr. Mason's testimony:

> Mr. Mason will testify about the history, structure, membership requirements, practices, rules, hierarchy, graffiti, slang, code, signing and colors of Nuestra Familia prison gang. Mr. Mason will offer his opinion about how certain acts of violence affect the standing of the Nuestra Familia as a whole. He will also offer his opinion about how certain acts of violence (including those involved in this case), may impact the standing of an individual member within the Nuestra Familia with respect to other gangs (including Norteños, Northerners and/or rivals) and within the community. He will offer his opinion regarding how the Nuestra Familia responds to those who have dropped out and those who work with the government. He will testify about the Nuestra Familia's relationship to the "14 bonds."

6

Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON

Skates's Supplemental Expert Notice at 1. The government references only this paragraph in its instant motion. However, Skates also provided nine additional numbered paragraphs detailing Mr. Mason's opinions, including:

1. In 1957 the Mexican Mafia gang aka *La EME* formed at DVI prison in Tracy, CA. The Mexican Mafia was composed of members from Northern and Southern California. Today the Mexican Mafia in California is primarily composed of people with origins in Southern California. In 1965 the *Nuestra Familia* (Our Family) aka *NF* gang was formed in CTF prison in Soledad, CA. The *Nuestra Familia* was composed of members from Southern and Northern California. Today the *Nuestra Familia* in California is primarily composed of people with origins in Northern California. The founders of the *NF* were not former members of *La EME* nor were those the only two groups of Mexican-American inmates in prison at the time. The concept of Northerners and Southerners developed in prison several years after these prison gangs were well established. Conflicts between the *NF* and *La EME* are rare in the California Department of Corrections (CDCR) and even more rare in communities outside of jail.

2. The *NF* membership is composed of a relatively small number of males who are sometimes called *carnales* (brother). The *NF* is accountable to a document called the Constitution, which is considered privileged information only shared with *NF* members. Law enforcement generally acquires updates to the Constitution before many *NF* members due to the near constant presence of internal informants. Those in the *NF* are obligated to remain active members in good standing, whether incarcerated or not, for a minimum of 25 years.

3. The *NF* generally recruits from the *Norteño* (Northerner) prison gang. The *Norteño* prison gang was established by the *NF* in the 1980's under the name of *Nuestra Raza* (Our Race/People) aka Northern Structure. They were rebranded as *Norteños* in the mid-1990s in a failed attempt to navigate around CDCR validations and an equally ineffective attempt at reducing tension divisions within the Northern Hispanic population in prison. *Norteños* often, though not always, are people who self-identified as a Northerner from a specific neighborhood outside of prison. *Norteños* subject themselves to the leadership of the *NF* and thus while they still may be from a neighborhood[,] their loyalty is to the *NF* first and foremost. Recruitment used to be done in jails only but is increasingly done in the community. *Norteños* outnumber *NF* but are still a relatively small group compared to the population that identify as Northerners. *Norteños* adhere to a document called the Fourteen Bonds and are obligated to be an active member during any and all periods of incarceration although they are encouraged to be active in the community outside of jail as well. The Fourteen Bonds is no longer the privileged teaching it once was[;] however[,] Northerners who know the Bonds are not held to the same standard as *Norteños*.

Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON

4. Northerners are people, generally of Mexican or Hispanic/Latin descent, who identify with the region, style and norms of Northern California. This lies in juxtaposition to those of the same ethnic origins who identify with the norms, customs etc. of the Southern California region. While people from neighborhoods across the state may identify as Northerner or Southerner and be from a criminal street gang, the label Northerner or Southerner itself, especially when used outside of a carceral setting, is not necessarily indicative of criminal street gang membership or fealty to a prison gang.

5. Based on having reviewed and authored thousands of different communications between *NF*, *Norteños* and Northerners, as well as *EME*, *Sureños*, Southerners, and a host of African Americans in prison of various affiliations, Mr. Mason will offer his opinion that "kites" are the primary form of communication between inmates. To the extent that inmates communicate with people in society, they may do so via letters, recorded phone calls, cell phones provided by prison staff and/or kites smuggled out of prison by people transferring/paroling.

6. The *NF* is not divided into regiments, but they do oversee regiments that they created to help manage criminal activity outside of prison. The territory of regiments change based on available manpower in particular areas. The vast majority of Northerners are not operating in conjunction with a regiment at any given time.

7. *Norteños* who elect to remain active upon paroling may be assigned to an existing regiment, tasked with developing a regiment under the guidance of (usually) an *NF* member in the region they parole to or just told to go on about their normal life and stay in touch in case their assistance is needed in the future.

8. Northerners may or may not engage in criminal activity. What criminal activity they do engage in may or may not have anything to do with identifying as a gang member. They may or may not get along with other Northerners. They may or may not be involved in violence with Southerners. The diversity amongst Northerners and how they conduct themselves is nearly infinite. Some neighborhoods have criminal street gangs. Few of those criminal street gangs have a formal leadership structure. In general, Northerners tend to identify with the color red, the number 14, in a multitude of representations, and the letter N.

9. Southerners, in general, tend to identify with the color blue, the number 13 in a multitude of representations and the letter S. Aside from that distinction virtually all that is true for Northerners in paragraph 8 above is true for Southerners.

*Id.* at 1–3. Skates also writes that Mr. Mason will "provide a general overview of *Nuestra Familia*, *Norteños*, and Northerners, to provide background and context to the jury to assist it in considering the evidence presented in this case." *Id.* at 3.

8

Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON

The government's main argument is that this disclosure does not more specifically provide Mr. Mason's opinions about: (1) "how certain acts of violence affect the standing of the Nuestra Familia as a whole"; (2) "how certain acts of violence (including those involved in this case), may impact the standing of an individual member within the Nuestra Familia with respect to other gangs (including Norteños, Northerners and/or rivals) and within the community"; (3) "how the Nuestra Familia responds to those who have dropped out and those who work with the government"; and (4) "the Nuestra Familia's relationship to the '14 bonds.'" Mot. at 5–6; Reply at 2.

The Court finds that Skates's disclosure complies with Rule 16(b)(1)(C) because Skates has adequately described Mr. Mason's opinions, the bases and reasons for those opinions, and the witness's qualifications. Fed. R. Crim. P. 16(b)(1)(C). The Court acknowledges that the law is not entirely clear on what constitutes a sufficient disclosure pursuant to Rule 16(b)(1)(C). However, this Court's review of available case law has identified some general principles. As an initial matter, what is required for a disclosure pursuant to Rule 16(b)(1)(C) is a "written summary" that "falls far short of the 'complete statement' required of litigants in civil cases." *United States v. Nacchio,* 555 F.3d 1234, 1262 (10th Cir. 2009). Indeed, as courts in this district have recognized that Federal Rule of Criminal Procedure 16(a)(1)(G) (the government parallel to Rule 16(b)(1)(C) disclosures) "does not require recitation of the chapter and verse of the experts' opinions, bases, and reasons." *Cerna*, 2010 WL 2347406, at *2. In addition, courts within this district have found a gang expert's disclosure sufficient where the disclosure revealed the expert's extensive experience monitoring the *Nuestra Familia*, including through interviews with gang dropouts and informants, and where the gang expert proffered testimony regarding "gang colors, gang symbols, gang terminology, means of communication, and interstate commerce." *See United States v. Cervantes*, No. 12-CR-00792-YGR, ECF No. 928 (N.D. Cal. Feb. 9, 2016). The Court has not found any case suggesting that the level of detail the government requests here is required under Rule 16(b)(1)(C).

Here, after the Court's order requiring supplemental disclosure, Skates provided a detailed

9

summary of Mr. Mason's gang-related opinions and the bases of the opinions. Although the government may want more, Rule 16(b)(1)(C) does not require more. S*ee, e.g.*, *Cerna*, 2010 WL 2347406, at *2. The Court finds Skates's supplemental disclosures sufficient "to allow counsel to frame a *Daubert* motion (or other motion in limine), to prepare for cross-examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony." *Id.* at *1.

Further, the Court notes that Rule 16(b)(1)(C) is reciprocal, meaning that a defendant's disclosure pursuant to Rule(b)(1)(C) is required only if "the defendant requests disclosure under subdivision (a)(1)(G) and the government complies." *See* Fed. R. Crim. P. 16. Therefore, the Court finds it helpful to compare the disclosures made by the government to determine whether Skates's disclosures are sufficient. Here, on September 25, 2018, the government filed its supplemental gang expert disclosures as to Skates. ECF No. 510. The government wrote in relevant part that its expert Lt. Ramos will:

> testify about the history, structure, membership requirements, practices, rules, hierarchy, graffiti, slang, code, signing, and colors of the *Nuestra Familia* prison gang. This testimony will include an explanation of what is known by *Nuestra Familia* gang members as the "Fourteen Bonds." He will also testify that Nuestra Familia prison gang members expect that other members will carry out acts of violence in adherence with the "Fourteen Bonds."

ECF No. 510-1 at 1. As for Officer Knowlton, the government wrote:

> Officer Knowlton will testify regarding his familiarity with Norteño street gangs in Salinas, including the street gangs involved in this case, East Las Casitas, Salinas East Market, and Santa Rita, as they existed in the time period alleged in the Superseding Indictment, and the preceding and subsequent years. He will also testify regarding these gangs' origins, structure, signs, graffiti, tattoos, colors and symbols, area of influence, rules, and expected contributions from members as set forth in the Superseding Indictment. He will testify about the tattoos that identify members of the gang and other ways that they self-identify.

*Id.* at 7.

The Court's review of the government's disclosures shows that the government's disclosures are just as general as Skates's. For example, the government's disclosure for Lt. Ramos states Lt. Ramos will provide "an explanation of what is known by *Nuestra Familia* gang

10
Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON

1 members as the "'Fourteen Bonds.'" ECF No. 510-1 at 1. Similarly, Skates disclosed that Mr. Mason will "testify about the Nuestra Familia's relationship to the '14 bonds.'" Skates's Supplemental Expert Notice at 1. If Skates's disclosures as to Mr. Mason are insufficient, that would raise questions about the government's own expert disclosures. However, all are sufficient for purposes of Rule 16.

The government's Rule 16 challenge to Skates's disclosures regarding Mr. Mason is DENIED.

**B. Government's Challenge to Mr. Mason Pursuant to Federal Rule of Evidence 702**

The government argues second that Mr. Mason's expert opinions should be excluded as unreliable and irrelevant under Federal Rule of Evidence 702. *See* Mot. at 6–7. Specifically, the government takes issue with the fact that Mr. Mason is proffering broad testimony about street gangs that follow a general "Northern" orientation and the Nuestra Familia rather than "the Salinas-based Norteño street cliques involved in this case." *Id.*

Rule 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). An expert witness may provide opinion testimony if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

To the extent the government seeks a categorical exclusion of the entirety of Mr. Mason's testimony under Rule 702, the Court DENIES the government's motion as overbroad. First, as this Court has already discussed in the context of Chavez and Skates's challenge to the government's gang experts, the Ninth Circuit has upheld trial court admission of gang expert testimony over Rule 702 and 403 challenges. *See, e.g.*, *Valencia-Amezcua*, 278 F.3d at 908 ("[I]t is commonplace that expert testimony regarding the structure of criminal enterprises is admissible to help the jury

11
Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON

assess a defendant's involvement in that enterprise."); *United States v. Patterson*, 819 F.3d 1495, 1507 (9th Cir. 1987) (same); *see also, e.g.*, *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984) ("The federal courts uniformly hold, however, that government agents or similar persons may testify as to the general practices of criminals . . . Such evidence helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior.").

Second, the Court agrees with Skates that Mr. Mason's proffered gang expert testimony is relevant because it provides important potential rebuttal evidence. Indeed, the introductory allegations of the superseding indictment describe with detail the Nuestra Familia, how it developed, and its competition with the Mexican Mafia, also known as "La Eme." *See* ECF No. 40 at 1–6. In particular, the superseding indictment describes how the "Nuestra Familia carnales controlled and directed the activities of other criminals, including members of the various Norteño street gangs[,] outside of prison." *Id.* at 2. The superseding indictment also describes the relationship between the smaller cliques and the Norteño and Nuestra Familia: "Norteños were organized into smaller cliques or 'hoods' based on the local neighborhoods where their members resided or were actively engaged in gang activity. Each Norteño clique had a name and its members and associates met and worked together to carry out their illegal activities for their own individual benefits, the benefit of the particular Norteño clique, the benefit of the Norteños generally, and the benefit of the Nuestra Familia." *Id.* at 2–3. Therefore, because Mr. Mason's proffered testimony—which is focused on the policies and control of the Nuestra Familia— addresses the allegations raised in the superseding indictment, the Court rejects the government's contention that Mr. Mason's proffered testimony is wholly irrelevant.

Moreover, Mr. Mason's proffered testimony concerns the same subject matter as the *government*'s proposed expert testimony from Lt. Ramos: the Nuestra Familia. Indeed, in the government's September 25, 2018 supplemental gang expert disclosure as to Skates, the government wrote that Lt. Ramos will testify about the "history, structure, membership

12

requirements, practices, rules, hierarchy, graffiti, slang, code, signing, and colors of the Nuestra Familia prison gang." ECF No. 510-1 at 1. Similarly, Skates provided that Mr. Mason will testify "about the history, structure, membership requirements, practices, rules, hierarchy, graffiti, slang, code, signing and colors of Nuestra Familia prison gang." Skates's Supplemental Expert Notice at 1. Lt. Ramos's proffered testimony will also "include an explanation of what is known by Nuestra Familia gang members as the 'Fourteen Bonds.'" ECF No. 510-1 at 1. Similarly, Mr. Mason's proffered testimony will discuss "the Nuestra Familia's relationship to the '14 bonds.'" Skates's Supplemental Expert Notice at 1. Therefore, the Court finds disingenuous the government's argument that Mr. Mason's testimony is irrelevant because it concerns the Nuestra Familia and not the Salinas-based Norteño street cliques involved in this case. Because the government has proffered expert testimony on Nuestra Familia, Skates is allowed to do the same.

Finally, although the government challenges Mr. Mason's expert opinions primarily because Mr. Mason's opinions do not address the Salinas-based Norteño street cliques, to the extent the government otherwise challenges Mr. Mason's expertise as to the testimony Mr. Mason proffers, the Court finds Mr. Mason's knowledge or experience or training sufficient to reject categorical exclusion of his testimony. In particular, Skates provided the government with Mr. Mason's CV and a description of Mr. Mason's experience. *See* ECF No. 420-1, Ex. C ("Mason CV"); Skates's Supplemental Expert Notice at 3–4. Mr. Mason's experience includes 15 years of personal involvement in "Latino and prison gang culture," "in settings that included juvenile and adult incarceration, group homes, treatment centers and neighborhoods across California." Skates's Supplemental Expert Notice at 3. In particular, Mr. Mason spent over "9 years incarcerated in the CDCR as both a Northerner and validated Norteño prison gang member." *Id.* Mr. Mason has been thoroughly removed from gang associations from more than 10 years and has served as an expert on Northerner "gang cases driving incidences in custody at various institutions and communicates throughout Northern California." *Id.* In that capacity, Mr. Mason has communicated with thousands of gang-influenced people with different affiliations and status. He

Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION
REGARDING JOSHUA MASON

specifically "is familiar with the structure and practices of so-called 'Norteño' street and prison gangs, the nature and extent of their connection to the Nuestra Familia and the practices and characteristics of various 'cliques' which allegedly operated under the umbrella of Norteños or the Nuestra Familia." *Id.* at 3–4. In light of Mr. Mason's above-described experience, and Mr. Mason's additional experience described in his CV and Skates's Supplemental Expert Notice, the Court finds Mr. Mason's expertise sufficiently reliable such that categorical exclusion is unwarranted. *See, e.g.*, *United States v. Hankey*, 203 F.3d 1160, 1169–70 (9th Cir. 2000) (finding gang expert's experience sufficient under Rule 702 where "the witness had devoted years working with gangs, knew their 'colors,' signs, and activities[,] [had] heard the admissions of the specific gang members involved[,] [and] had communicated and worked undercover with thousands of other gang members . . . [because] FRE 702 works well for this type of data gathered from years of experience and special knowledge.").

In sum, the Court rejects the government's argument for categorical exclusion of Mr. Mason's testimony pursuant to Rule 702. Mr. Mason is sufficiently qualified to give his proffered testimony—which is focused on the policies and control of the Nuestra Familia. Much of the government's arguments go to weight, not admissibility. Many of the government's challenges may be properly addressed through rebuttal evidence, cross-examination, and closing argument. Therefore, the Court DENIES in part the government's motion, including the government's request for an evidentiary hearing, because the government has not shown that complete exclusion of Mr. Mason's testimony pursuant to Rule 702 is warranted.

To the extent the government is concerned that Mr. Mason may offer his opinion as to the Salinas-based Norteño street cliques at issue in the instant case, the Court notes that Mr. Mason's expert disclosures appear to lack any proffer of such testimony, and therefore, the government's fears may be unfounded. However, to the extent Mr. Mason attempts to offer his opinion as to the Salinas-based Norteño street cliques at issue in the instant case, the Court agrees with the government that Mr. Mason is not sufficiently qualified to testify as to these specific Salinas-based

14

Norteño street cliques. Indeed, Mr. Mason's expert disclosure is lacking in information showing that he has knowledge, training, or experience with regards to the Salinas-based Norteño street cliques at issue in the instant case. Therefore, the Court GRANTS the government's Rule 702 challenge to the extent it seeks to exclude Mr. Mason from testifying as to the Salinas-based Norteño street cliques at issue in the instant case. The Court recognizes that the line is difficult to draw. Mr. Mason is qualified to talk about the relationship of Nuestra Familia and Norteños to street gangs generally, but he has no expertise as to the Salinas-based Norteño street cliques at issue in the instant case.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES in part the government's *Daubert* motion to exclude the expert testimony of Joshua Mason to the extent the government challenges Mr. Mason's expert disclosure pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C). The Court DENIES in part the government's Federal Rule of Evidence 702 challenge to the extent it seeks to categorically exclude Mr. Mason's testimony, but GRANTS in part to the extent it seeks to exclude Mr. Mason from testifying as to the Salinas-based Norteño street cliques at issue in the instant case.

**IT IS SO ORDERED.**

Dated: February 14, 2019

_____
LUCY H. KOH
United States District Judge

Case No. 15-CR-00285-LHK
ORDER DENYING IN PART AND GRANTING IN PART THE GOVERNMENT'S DAUBERT MOTION REGARDING JOSHUA MASON