ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONATHAN U. LEE (CABN 148792)
SLOAN HEFFRON (CABN 285347)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Jonathan.Lee@usdoj.gov
    Sloan.Heffron@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> VICTOR SKATES, <br><br> Defendant. | CASE NO. 15-CR-00285-PCP <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Date: January 15, 2025 <br> Time: 10:00 a.m. <br> The Honorable P. Casey Pitts |

**I.    INTRODUCTION**

On October 7, 2024, defendant Victor Skates pleaded guilty to Count One of the Superseding Indictment: Racketeering Conspiracy, in violation of 18 U.S.C § 1962(d).  Dkt. 1071 (Plea Agreement). Skates entered his guilty plea pursuant to a Rule 11(c)(1)(C) plea agreement which calls for, among other things, a prison term of 317 months, adjusted from 480 months to account for the 163 months he has served in custody for conduct related to his participation in the Racketeering Conspiracy.  *Id.* ¶ 8.

For the reasons set forth below, the United States respectfully recommends that the Court accept the binding plea agreement and impose the sentence agreed to by the parties and recommended by U.S. Probation.

## II. BACKGROUND

<u>Offense Conduct</u>

The Presentence Investigation Report provides a detailed account of the offense conduct, and the facts are uncontested. Dkt. 1087 ("PSR") at ¶¶ 14-40. From at least 2009 to 2011, Victor Skates was a member of the Norteño street clique "East Las Casitas" ("ELC") and a member of the larger Salinas Norteños Enterprise (the "Enterprise"). *Id.* ¶¶ 14, 18-20. The Enterprise was involved in murder, attempted murder, robbery, obstruction of justice, witness tampering, and other acts of violence. *Id.* ¶ 19. Skates joined the Enterprise and agreed to conduct the affairs of the Enterprise through a pattern of racketeering activity. *Id.* ¶ 20. Skates did more than agree to participate in the affairs of the Enterprise; he actively participated in numerous violent crimes in furtherance of the Enterprise. Skates knew that Enterprise members would kill and try to kill actual and suspected Sureños, people who defied the Salinas Norteños Enterprise, and people suspected of cooperating with law enforcement. *Id.* ¶ 23. With that knowledge, Skates repeatedly participated in "hunts," the purpose of which was to shoot and try to kill known and suspected rival gang members and others who defied the will of the Enterprise. *Id*. By his own admission, Skates personally participated in ten separate shootings, resulting in the deaths of eight people and serious injuries to several others. Plea Agreement ¶ 2(j).

Specifically, on January 15, 2009, Skates shot and killed a suspected Sureño gang member, G.A., on Las Casitas Drive in Salinas. After being driven to the area of G.A.'s house by another individual, Skates fired multiple shots, killing G.A. and wounding the foot of a woman standing near G.A. *Id*. ¶ 2(j)(i); PSR ¶ 24.

Less than seven months later, on August 2, 2009, while on Dallas Street in Salinas, Skates came upon a suspected Norteño dropout, A.A., who Skates knew had been marked for death. After retrieving a firearm, Skates and another individual went to A.A.'s home to kill him. There, Skates opened the screen door of A.A.'s residence and proceeded to shoot A.A., striking him several times. A woman, J.A., tried to protect A.A., and Skates shot her as well. The individual with Mr. Skates also fired at the victims. Both A.A. and J.A. died from their bullet wounds. Plea Agreement ¶ 2(j)(ii); PSR ¶ 25.

The following month, on September 10, 2009, another person told Skates that a known Sureño,

E.G., was hanging out at an apartment complex on Rider Avenue in Salinas. Skates and another individual obtained firearms and went to the apartment complex to look for and kill E.G. Upon arrival, Skates spotted multiple young men, including E.G. Skates shot at the group of young men, who then scattered and fled. As he attempted to flee, E.G. was fatally shot by Skates. Plea Agreement ¶ 2(j)(iii); PSR ¶ 26.

On December 11, 2009, Skates went with another individual to hunt for S.A., who Skates believed was a Sureño who lived on Rider Avenue in Salinas. Skates had been trying to kill S.A. for some time because Skates believed S.A. was a very active gang member. During the hunt, Skates saw S.A. exit his residence and enter a Ford Mustang parked outside. Skates approached S.A. as he sat in the Mustang and shot him multiple times. S.A. died as a result of Skates shooting him. Plea Agreement ¶ 2(j)(iv); PSR ¶ 27.

Nine months later, on September 11, 2010, Skates and another individual went hunting for Sureños in the area of Sieber Street in Salinas. While hunting, Skates spotted a man, F.A., who Skates thought was a Sureño gang member. A young woman, I.C., was with F.A. Skates shot at F.A. and I.C. in an attempt to kill them. Both victims survived, but I.C. was paralyzed as a result of Skates shooting her. Plea Agreement ¶ 2(j)(v); PSR ¶ 28.

Less than three weeks later, on October 1, 2010, Skates was hunting for Sureños in the neighborhood surrounding Alisal High School in Salinas. While hunting, Skates spotted a young man, J.C., who Skates believed was a Sureño. Skates exited the vehicle he was in and entered the campus of Alisal High School in order to kill J.C., who had also entered the campus. Skates caught up with J.C. as he walked across the school's athletic fields and shot him multiple times. J.C. died as a result of Skates shooting him. Plea Agreement ¶ 2(j)(vi); PSR ¶ 29.

On November 5, 2010, while in a car driven by another individual in the area of Bellehaven Street in Salinas, Skates spotted a car occupied by three suspected Sureños. Skates directed the driver of the car he was in to pull alongside the target vehicle. Skates then opened fire at the driver of the target vehicle, A.A., and the other occupants, J.R. and J.C., in an attempt to kill them. A.A. was grazed in the head by a bullet and also struck in the wrist. J.R. and J.C. were struck or grazed by bullets that Skates

fired. All three victims survived the shooting. Plea Agreement ¶ 2(j)(vii); PSR ¶ 30.

Five days later, on November 10, 2010, Skates went hunting for a Sureño gang member to kill. While in the area of Del Monte Avenue in Salinas, Skates spotted a known Sureño, J.V.C., in a wheelchair. J.V.C. was in a wheelchair because he had been wounded in a prior shooting. Skates approached J.V.C. and shot him in the head as he was attempting to cross the intersection. The victim died as a result of Skates shooting him. Plea Agreement ¶ 2(j)(viii); PSR ¶ 31.

Nine days later, on November 19, 2010, Skates and other individuals with him learned that people Skates believed to be Sureños were hanging out at a residence on Saint Edwards Avenue in Salinas. Skates decided to go to the house to shoot and kill the Sureños who were there. Skates armed himself with a .40 caliber Glock handgun with an extended magazine, and at least one of the other individuals with Skates was also armed with a handgun. They parked a short distance from the target house, and the driver remained in the vehicle while Skates and another individual approached the target house on foot. Skates walked up the driveway towards the target house and saw three men in the garage who he believed to be Sureño gang members. Skates shot at the victims in an attempt to kill them, emptying his entire magazine (more than 10 rounds) before fleeing back to the car. One of the victims, F.B., died as a result of Skates shooting him. A second victim, M.B., was struck by bullets but survived. A third victim, R.F., escaped without being struck by any bullets. Plea Agreement ¶ 2(j)(ix); PSR ¶ 32.

In addition, Skates admitted to personally participating in seven takeover-style armed robberies of various banks and commercial institutions in furtherance of the Salinas Norteños Enterprise. Plea Agreement ¶ 2(k).

Specifically, on February 21, 2009, Skates and others robbed the Central Jewelry store in Salinas. Skates entered the store with two others while their getaway driver remained outside. Skates was armed with a firearm, which he brandished at the employees and used to strike one employee in the head. Skates and the other individuals fled the store with bags they had filled with jewelry. The owner of the jewelry store reported a loss in excess of $40,000. Plea Agreement ¶ 2(k)(i); PSR ¶ 34.

On October 19, 2009, Skates and others robbed the Zales jewelry store in Gilroy. During the robbery, Skates pointed a semi-automatic handgun at the employees and forced them to open the jewelry

cases. The Zales jewelry store reported that the total value of the jewelry stolen during this incident was approximately $1,000,000. Plea Agreement ¶ 2(k)(ii); PSR ¶ 35.

On June 2, 2010, Skates once again robbed the Zales jewelry store in Gilroy with other individuals. During this robbery, Skates again pointed a semi-automatic handgun at the employees so that they would open the jewelry cases. The robbers then used zip ties to bind two employees. The Zales jewelry store reported that the total value of the jewelry stolen during this incident exceeded $800,000. Plea Agreement ¶ 2(k)(iii); PSR ¶ 36.

On October 20, 2010, Skates and others robbed the Golden One credit union in Salinas. Skates again armed himself with a firearm for this incident. During the robbery, Skates threatened to shoot a female bank clerk to get her to unlock a money bag. Approximately $7,000 was stolen during this robbery. Plea Agreement ¶ 2(k)(iv); PSR ¶ 37.

Approximately one month later, on November 23, 2010, Skates and others robbed a Bank of the West in San Jose. Skates and another individual went inside with firearms and committed the robbery while another person remained outside as the getaway driver. During the robbery, Skates and the other individual brandished their pistols at the bank employees and customers. Approximately $15,000 was stolen during this robbery. Plea Agreement ¶ 2(k)(v); PSR ¶ 38.

Less than a month later, on December 16, 2010, Skates and others robbed the Wells Fargo bank in Watsonville. One individual remained outside as the getaway driver while Skates and another person went inside, armed with firearms. Approximately $12,000 was stolen during this robbery. Plea Agreement ¶ 2(k)(vi); PSR ¶ 39.

On January 7, 2011, Skates and others robbed the Rabobank in Watsonville. Two of the individuals remained outside in separate vehicles while Skates and another person entered the bank with firearms, which they brandished at bank employees and customers during the robbery. Approximately $65,000 was stolen during this robbery. Plea Agreement ¶ 2(k)(vii); PSR ¶ 40.

Procedural History

By 2011, state prosecutors had charged Skates with the November 13, 2009 armed robbery of Alisal Market in Salinas. On June 9, 2011, Skates was arrested in connection with that case, and has

remained in continuous custody since. PSR ¶ 6. On April 18, 2012, after pleading guilty to the robbery charge and admitting firearm and gang enhancements in Monterey County Superior Court, Skates was sentenced to 17 years in state prison. *Id*. ¶ 206.[1]

On May 27, 2015, the grand jury returned an Indictment in the present case. Dkt. 1 (Indictment). On June 1, 2015, a writ of habeas corpus ad prosequendum was issued in connection with this case. Dkt. 4 (Petition; Writ). On July 7, 2015, Skates made his initial appearance on the Indictment. Dkt. 26-1 (Minute Order). On October 28, 2015, the grand jury returned a Superseding Indictment in the present case. Dkt. 40 (Superseding Indictment). On October 7, 2024, Skates pleaded guilty to Count One of the Superseding Indictment. Plea Agreement; dkt. 1069 (Minute Order). As of January 15, 2025, Skates will have been in continuous custody for 163 months and 7 days since his arrest on June 9, 2011.

### III.     SENTENCING GUIDELINES CALCULATIONS

The government agrees with U.S. Probation's calculation of the applicable Sentencing Guidelines in this case. PSR ¶¶ 46-201, 240. Specifically, the government agrees that, after grouping, Skates's Total Offense Level is 43. *Id*. ¶ 201. This Total Offense Level accounts for a three-level reduction under U.S.S.G. §3E1.1(a)-(b) for acceptance of responsibility, as well as the cap of 43. *Id*. ¶¶ 199-201. The government agrees that Skates's five criminal history points place him within Criminal History Category III. *Id*. ¶¶ 208-209. An Offense Level of 43 in Criminal History Category III yields an advisory sentencing range of life. *Id*. ¶ 240. U.S. Probation joins the parties in recommending thar the Court sentence Skates to a term of 317 months, adjusted down from 480 months. *Id.* at pg. 38.

### IV.     DISCUSSION

The plea agreement in this case seeks to have Skates sentenced to a total term of 40 years' (480 months) imprisonment, with credit for the time he has already spent in custody in connection with his April 2012 conviction for the November 2009 Alisal Market robbery.

Because he appears in the present case pursuant to a writ of habeas corpus ad prosequendum, Skates remains under the primary jurisdiction of state authorities, where he has been since June 9, 2011.

---

[1] The parties agree that the November 2009 robbery of Alisal Market is relevant conduct to the Racketeering Conspiracy to which Skates pleaded guilty in the instant case. *See* PSR ¶ 206; Plea Agreement ¶ 8.

"When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly." *Thomas v. Brewer*, 923 F.2d 1361, 1367 (9th Cir. 1991) (citation omitted). The parties agree that Skates has not yet been received into federal custody.

The parties further agree that, by operation of law, the Federal Bureau of Prisons ("BOP") will not credit the time Skates has spent in state custody toward his sentence in the present federal case, as this time has been credited against Skates's April 2012 sentence for the Alisal Market Robbery. 18 U.S.C. § 3585(b); *see also United States v. Graham*, 538 F.2d 261, 265 (9th Cir. 1976) ("Unless time is served in federal custody, it does not count as credit for time served under a federal sentence.").[2]

To achieve a 480-month sentence that credits Skates for the time he has spent in state custody, the Court must ultimately impose a sentence that is adjusted from 480 months, pursuant to U.S.S.G. §5G1.3(b). Accordingly, to account for Skates's confinement over the past 163 months, the proposed term of imprisonment agreed to by the parties (the "recommended sentence") is 317 months (to commence upon imposition), adjusted from 480 months pursuant to U.S.S.G. §5G1.3(b).

**A. Nature and Circumstances of the Offense**

Skates's criminal conduct warrants the recommended sentence. Over the course of two years, Skates engaged in numerous shocking acts of violence, as detailed above. By his own admission, Skates is directly responsible for the deaths of eight people, as well as the various injuries and extensive trauma he inflicted upon other victims and their families. Even when viewed alongside other members of ELC—a particularly violent Norteño subset whose members were especially active and committed to the violent precepts of the gang—Skates stands out as a prolific killer.

The extraordinary harm Skates has caused his victims is incalculable. And, as detailed in the victim impact statement of B.A.—whose brother was murdered by Skates and Daniel Chavez on January 15, 2009, and who was also wounded during the shooting—the effects of Skates's actions on the families of his victims have been devastating. PSR ¶ 42. B.A. described living in fear for many years following her brother's death. *Id.* Remarkably, B.A. has expressed forgiveness to Skates and Chavez

---

[2] This is consistent with information BOP Counsel has provided to government counsel during consultations regarding custody credit calculations.

for the harm they inflicted upon her family. *Id*.

Skates joined the Salinas Norteños Enterprise knowing that the Enterprise sought to kill rival gang members, and he personally participated in numerous murders, attempted murders, and armed robberies. His crimes evinced a high degree of cruelty, viciousness, and callousness. Based principally on the seriousness of Skates's crimes, the government submits that the recommended sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing under 18 U.S.C. § 3553(a).

### B. History and Characteristics of the Defendant

While the Guidelines recommend a sentence of life in prison for Skates, the United States recommends a downward variance to 317 months (adjusted from 480 months) due largely to Skates's young age while participating in the Enterprise and his relatively limited adult criminal history.

As of January 15, 2009—the date of the first murder described above—Skates was 19 years old. He was 21 years old when he committed the most recent crime described above: the January 7, 2011 robbery of the Rabobank in Watsonville. Approximately five months later, at age 22, Skates was arrested, and he has remained in custody since that time. Skates was relatively young during the time period covered in this case, and he was the second youngest of the nine defendants charged in the Superseding Indictment, as Terrell Golden was the only co-defendant who was younger. To be sure, Skates's relative youth in no way excuses his violent and horrific conduct. However, it is a mitigating factor that counsels in favor of the recommended sentence, rather than life, in light of Skates's guilty plea and acceptance of responsibility.

Additionally, Skates did not have any adult convictions prior to committing the offenses in this case. While this may be a reflection of his relative youth, the absence of any adult convictions prior to his involvement in the Racketeering Conspiracy is another factor supporting a variance. Previously, Skates had sustained juvenile wardship petitions in two separate cases, each of which occurred in 2005. One case involved charges of possession of a concealed weapon, active participation in a criminal street gang, criminal threats, and burglary. PSR ¶ 204. The second case also involved a burglary. *Id.* ¶ 205.

At the time he committed the January 15, 2009 homicide, Skates had no adult criminal convictions. His first adult conviction occurred in 2012 based his guilty plea in connection with the

Alisal Market robbery. Because the facts underlying that conviction are relevant conduct to the present case, that conviction is not awarded any criminal history points. *Id.* ¶ 206; U.S.S.G. §4A1.2, note 1.

Skates's involvement in the murders, attempted murders, and armed robberies discussed above is egregious, and he should be held to account for those crimes with an extraordinarily long sentence that separates him from society from multiple decades. And while his relative youth and lack of an adult criminal history at the time he committed the crimes in this case do not excuse or lessen the impact of his conduct, they are mitigating factors which support the conclusion that the recommended sentence is sufficient, but not greater than necessary to achieve the goals of sentencing in this case.[3]

### C. Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

Victor Skates is to be sentenced for one of the most serious crimes that can be committed—murder. Over a two-year span, Skates participated in ten separate shootings, resulting in the deaths of eight people and significant injuries to several others. During this same period, he participated in seven separate takeover-style armed robberies of various banks and commercial institutions in which firearms were brandished at the victims. Under these circumstances, a significant sentence is necessary to reflect the seriousness of Skates's criminal conduct, promote respect for the law, and provide just punishment.

### D. Need for the Sentence to Afford Adequate Deterrence

Salinas, California, is plagued by gang violence. The Enterprise that Skates admitted to joining was particularly violent and was committed numerous murders, attempted murders, and violent robberies. Despite this prosecution, Salinas continues to be plagued by gang-related violence, and Salinas area Norteños continue to commit violent crimes in Salinas and in surrounding areas. Imposition of the recommended sentence for Skates's conduct in this case will provide important deterrence by sending a signal to gang members in Salinas and the surrounding areas that their violent crimes will result in significant prison sentences.

---

[3] Skates will turn 36 years old in February 2025. Given that federal defendants typically serve approximately 85% of their sentences, a sentence of 317 months (26.4 years) from the date of imposition would likely result in Skates serving approximately 269 additional months (22.4 additional years) in custody, assuming he serves the sentence at 85%. By that time, he will be 58 years old, and will have spent over 36 years in continuous custody.

UNITED STATES' SENTENCING MEMO.        9
15-CR-00285-PCP

**E. Other Sentencing Considerations**

The PSR contains a thorough discussion of the sentencing factors applicable to Victor Skates. The proposed sentence set forth in the binding plea agreement represents the culmination of protracted negotiation and deliberation, consideration of litigation risks and other factors, and was an effort to arrive at a sentence for this defendant which both reflects his individual sentencing factors under 18 U.S.C. § 3553(a) and avoids unwarranted sentencing disparities among defendants convicted of similar conduct. Skates personally killed multiple people and bears tremendous culpability for all of his brutal and violent conduct. The government's sentencing assessment for Skates takes into consideration the circumstances of this defendant's upbringing, his known criminal history, and his substance abuse issues. Moreover, from the government's point of view, the benefits from obtaining a plea short of trial—and prior to disclosure of identifying information of cooperators, victims, and civilian witnesses—is a key factor in reaching the recommended sentence. The proposed sentence will bring finality to this case and closure to the victims and their families, many of whom have been dealing with the related legal proceedings in this case for nearly a decade.

**V. CONCLUSION**

The sentence agreed to by the parties and recommended by U.S. Probation is sufficient, but not greater than necessary to achieve the ends of justice in this case. For all of the reasons discussed above, and pursuant to the written plea agreement and the PSR, the government respectfully requests that the Court sentence Victor Skates to a custodial term of 317 months (to commence upon imposition), adjusted from 480 months pursuant to U.S.S.G. §5G1.3(b), followed by five years of supervised release, with all the terms and conditions set forth in the PSR.

DATED: January 8, 2025                                          Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

   /s/
JONATHAN U. LEE
SLOAN HEFFRON
Assistant United States Attorneys